| | |
|---|---|
| 5 | 43 |
| 126a | 183 |
| 5 | 43 |
| 135a | 449 |
| 5 | 43 |
| 74h | 175 |
| 5b | 43 |
| 23ap175 | |

</div>

Same Term. *Strong, Hurlbut, and Edwards,* Justices.

The People, *ex rel.* Moore, *vs.* The Mayor, &c. of the City of New-York.

A certiorari will lie to review the *judicial* acts of municipal corporations.

Yet where the act complained of is simply *ministerial*—as the passing of an ordinance by a common council for the construction of a sewer—it cannot be reviewed on certiorari.

But although such ordinance cannot be annulled, on certiorari, it is competent for the supreme court, in a proper case, to vacate the estimate and assessment of the common council in affirming the proceedings for the construction of the sewer; as the common council then acts in a judicial capacity.

And if the estimate and assessment were substantially erroneous, and ought not to have been ratified by the common council, they may be vacated by the supreme court, on certiorari.

A corporation, after having appointed commissioners of estimate and assessment, has the right to remove them, and appoint others in their place.

An estimate of the expense of constructing a sewer, in a city, ought to be made before a contract for the work is executed, or operations are commenced. And a contract executed previous to the making of the estimate is invalid, and creates no charge against the owners of the lots assessed, nor incumbrance upon their property.

Yet the premature execution of a contract for the work will not affect the validi-

ty of the original ordinance for the construction of the sewer, nor of a subsequent estimate or assessment properly made.

A common law certiorari is not a writ of right, but may be granted, or refused, at the discretion of the court.

Before allowing, or acting upon, the writ, the court should be satisfied that it is essential to prevent some substantial injury to the applicant; and that the object aimed at by him would not, if accomplished, be productive of great inconvenience or injustice. It should seldom, if ever, be allowed, to enable a party to take advantage of mere technical objections. *Per* STRONG, P. J.

CERTIORARI, to review and vacate the proceedings of the defendants relative to the construction of a sewer in John-street, in the city of New-York. From the return to the certiorari the following facts appeared. On the 29th of April, 1847, the corporation of New-York passed an ordinance for the building of a sewer in John-street. On the same day, and at the same time, the corporation appointed Elias L. Smith, Richard I. Smith and William Sinclair, jr. assessors, to make an estimate and assessment, in conformity to the ordinance directing the sewer to be built. On the 10th of May, 1847, the contract to build the sewer was made, and the sewer was to be completed on or before the 15th day of August, 1847. The sewer was completed according to contract. The assessment list bears date the 5th of October, 1847. On the 7th day of October, 1847, the common council passed a resolution that the assessors appointed in this case be removed, and that Martin E. Thompson, John T. Dodge and Revo C. Hance, be appointed assessors in their places. Thompson, Dodge and Hance took the oath on the 15th day of October. On the 29th of November, 1847, the assessment list, together with the certificate of the said Thompson, Dodge and Hance, was presented to the board of assistant aldermen for ratification, which passed that board, and was then sent to the board of aldermen and passed on the 7th day of December, and was approved by the mayor on the same day.

*R. Mott,* for the relator.

*Willis Hall,* for the defendants.

*By the Court,* STRONG, P. J.   The principal, and only material objections to the proceedings of the defendants in this matter raised by the relator are, 1st. That the corporation removed the commissioners of estimate and assessment first appointed, and substituted others in their place; and 2d. That a contract for the work was executed, and operations were commenced, before the estimate of the expense required by the statute had been made. A preliminary objection was raised by the defendants, that the relator is not entitled to any remedy by *certiorari.*

I will consider the preliminary objection first. There can be no doubt that a certiorari will lie to review the *judicial* acts of municipal corporations. That was admitted in the case of *Mount Morris Square,* (2 *Hill,* 14,) cited by the defendants' counsel, and is in conformity with the decisions of the late supreme court in several antecedent cases. (*Elmendorf* v. *The Mayor, &c. of New-York,* 25 *Wend. R.* 693; *Le Roy* v. *the same defendants,* 20 *John. R.* 430.) The authorities are equally clear that if the act complained of is simply *ministerial,* it cannot ordinarily be reviewed on certiorari. Such was the ordinance of the common council for the construction of the sewer in question. That was a simple exercise of their ministerial, or if I may use the expression, legislative power. That, if authorized by their charter, which it clearly was, resolved itself into a question of expediency, solely for their consideration, and which cannot be reviewed here. But although the ordinance itself cannot, I think, be annulled by this court, yet it is competent for us, in a proper case, to vacate the estimate and assessment of the common council in affirming those proceedings; as they then acted in a judicial capacity. That may be, although they do not constitute an ordinary judicial tribunal. It is sufficient if they are invested by the legislature with power to decide on the property or rights of the citizen. In making their decision they act judicially, whatever may be their ordinary character. The defendants are authorized by the statute, (2 *R. L. of* 1813, § 175,) to *ratify* the estimate and assessment when made, and reported to them by the commis-

sioners, and then the same become binding and conclusive upon the owners and occupants of, and constitute a lien upon, the lots on which the assessments are made. In ratifying these proceedings of the commissioners the defendants unquestionably act judicially. It is not simply the performance of an act of their own, but it is *reviewing* and *deciding* upon the conduct of others. The justices of this court, in passing upon the proceedings of the commissioners, in street cases, exercise a similar power; and it has been frequently decided, that their acts in such cases may be reviewed on certiorari. And if in this case the defendants have committed a mistake in confirming acts not authorized by the statute, whereby the rights of the citizen are prejudiced, their error may be corrected by this court. It would be intolerable to allow these corporations to proceed in the exercise of their numerous, and some of their almost arbitrary powers, without some corrective. It is true, that where their acts are simply void, the law will afford a remedy; but there are many cases where their acts would not be wholly nugatory, and yet they might be very oppressive; such, for instance, as adopting a wrong principle relative to assessments, by which a citizen · might be subjected to a tax, who ought not to be taxed at all. There can be no doubt that if the estimate and assessment were substantially erroneous, and ought not to have been ratified by the common council, they may be vacated by this court.

The first objection to the estimate and assessment is that they were made by persons not legally competent to act, and that consequently their proceedings were null and void. It is contended that, inasmuch as the corporation had at first appointed other commissioners, they could not subsequently create, but only fill, a vacancy. There is much plausibility in this objection from the fact, that while the statute expressly authorizes a removal in many, indeed most instances, as in cases of firemen, (§ 75,) assistant of the clerk of the common council, (§ 167,) weighmasters, (§ 238,) and commissioners of the alms-house, (§ 247,) it nowhere confers *in terms* the power to remove commissioners of estimate and assessments. Still I think, (although I

must confess with some hesitation,) that the power of appoint-
ment given in general terms, and without restriction, for the
purpose of carrying out some project of which it forms only a
part, implies the power of removal. When the persons first
appointed, refuse to act, or become incompetent by reason of in-
sanity or bodily infirmity, which incapacities do not of themselves
vacate the office, the power of removal seems to be essential,
and indeed necessary to complete the project. There is a man-
ifest difference between the delegation of a power of appoint-
ment, standing alone, and where it is incidental to, and a part
of, a more general and extended transaction. Where the power
is insulated and single, as to appoint an arbitrator or umpire, it
is exhausted by the first selection of either. But where it is
general, to arbitrate, and the selection of an arbitrator merely
forms a part of it, there the power of appointment would con-
tinue until the award should be made. The president and sen-
ate of the United States are authorized, by the constitution, to
make various appointments to office for the purpose of conducting
the affairs of the country. No power of removal is given in ex-
press terms, yet it has been uniformly exercised, and without
any doubt as to its constitutionality. So the president is author-
ized to fill up any vacancies in office, that may happen during
the recess of the senate, but he is not empowered, in terms, to
effect such vacancies. Yet he has uniformly made removals
during such recess, and, although his power to do so has been
occasionally doubted, I believe that it is now generally ad-
mitted. The cases are not precisely parallel, yet the practice of so
many eminent men, aided as they doubtless were by able legal
advisers, is in favor of the validity of the principle. The cases
before the late supreme court, cited by the counsel for the rela-
tor, are not decisive, if they have any force, against the valid-
ity of the power exercised by the corporation in this instance.
In *The Mayor, &c. of New-York* v. *The Manhattan Compa-
ny*, (1 *Caines' Rep.* 507,) one question was, whether a single
judge who had appointed commissioners of estimate could
revoke the appointment of one who was interested. The act
incorporating the Manhattan Company directed that it should

be lawful for the judges of the supreme court, or any one of them, to nominate and appoint the commissioners. The court say that an application could not have been (successfully) made "to the judge who granted the warrant to make a further or other appointment; for under the words of the act, the judge cannot revoke his warrant. He therefore is *functus officii. The only recourse then is to this court.*" The inference is plain that the court, (which had in that case the same power in respect to appointments which is vested in the corporation in the matter now under consideration,) could revoke the first, and make a second appointment. In the *Matter of Beekman-street,* (20 *John. Rep.* 269,) this court did not decide that they had not the power to make new appointments, but they denied the motion to set aside the proceedings previously instituted, and (as they said,) as a *necessary consequence,* the application to appoint new commissioners. It does not appear from the papers for what cause the defendants removed the first, and appointed the second set of commissioners in this case, but it is to be presumed that they acted from proper motives, in the absence of any evidence to the contrary.

I fully concur in the opinion expressed by Chief Justice Nelson in *Elmendorf* v. *The Mayor, &c. of New-York,* (25 *Wend.* 696,) that " an estimate of the expense *should* be made before the contracts are entered into, or the work is commenced." That was in a case relative to streets; but the rule, as a matter of expediency, is equally applicable to proceedings under that part of the statute authorizing the construction of sewers. It was not, however, decided in that case; nor is it at all inferable from the statute, that a premature contract for the work would affect the validity of a subsequent estimate or assessment. The precedent contract would doubtless be invalid, and would create no charge against the owners of the lots, nor incumbrance upon their property. Neither should it have any influence over the commissioners, in forming the estimate of the expenses of the projected improvement. They are bound to make all due inquiries in person; and should they adopt the opinion of others without such inquiry, they would grossly fail in discharging

The People *v.* The Mayor, &c. of New-York.

the obligation which their appointment, and the oath which they are required to take, devolve upon them. If, however, they in this case fully examined into the matter for themselves, and came to the same conclusion, as to the requisite expense, with that adopted by those who made the contract, I can see no reason why they should not fix their estimate at the same amount. There is nothing to prove that they did not adopt this course, and the contrary ought not to be inferred from slight circumstances; as it would involve them in the charges of a gross neglect of duty, and a violation of their oaths. I am far from approving of the conduct of the corporation in precipitately making the contract in question and commencing operations under it, but assuredly neither could affect the validity of the original ordinance. Nor do I think that those hasty proceedings could prevent their subsequently making an effectual estimate and assessment. After they had been completed, it was competent for the corporation to renew the contract previously made, and to cause the work to be prosecuted and finished pursuant to its terms.

The conclusion to which I have come is, that neither of the objections raised by the relator is well taken. But there is another point in this case which is decidedly adverse to the relief now sought by the relator. It has been decided in numerous cases, both in England and in this country, that a common law certiorari is not a writ of right, but may be granted or refused at the discretion of the court. (*Bac. Abr. tit. Certiorari, A.* and cases there cited. *Ludlow* v. *Ludlow,* 1 *Southard's N. J. Rep.* 397. *Ex parte Western,* 11 *Mass. Rep.* 417. 4 *Pick.* 25. 1 *Coxe's N. J. Rep.* 318. *The People* v. *The Supervisors of Allegany,* 15 *Wend.* 198. 2 *Hill,* 14.) Before allowing or acting upon the writ, the court should be satisfied that it is essential to prevent some substantial injury to the applicant, and that the object aimed at by him would not, if accomplished, be productive of great inconvenience or injustice. It should seldom, if ever, be allowed to enable a party to take advantage of mere technical objections. In this case it is by no means apparent that the relator has sustained any injury. The applicants for the projected improve-

ment were numerous; and but two persons remonstrated against it. The list of owners of lots assessed is large, and comprehends some of the most respectable and intelligent inhabitants of the city, and so far as appears from the papers, but one of them now opposes the proceedings. There is nothing to show that the estimate of the expenses was too high, or that the assessment was partial, unequal, or unjust. From all this it is reasonable to infer that the projected improvement was beneficial to the owners of the adjacent property, and that the amount assessed to each was no more than a fair remuneration for the benefit conferred upon him. It is by no means to be inferred that the relator will be seriously or at all injured, should the proceedings be sustained. On the other hand, should the estimate and assessment now be set aside, the owners of the lots assessed, who have paid the amount charged against them, (the number of whom has doubtless been much increased by the delay which has taken place, and for which no excuse has been offered by the relator,) could respectively sustain actions against the corporation for the return of their money, and the burthen of effecting this improvement would be thrown upon all the tax-paying inhabitants of the city, and not solely or principally upon those whose estates have been improved by the project. Under such circumstances I think we are bound to quash the certiorari in this case as improvidently issued, and my brethren concurring, an order must be entered accordingly.

Certiorari quashed.