City of Camden v. Mulford.

## THE TREASURER OF THE CITY OF CAMDEN vs. WILLIAM B. MULFORD.

1. The acts of a municipal corporation may be reviewed in this court by *certiorari*, at the instance of a party aggrieved, whether such acts are judicial or legislative.

2. An ordinance authorizing new improvements to be made, such as opening and paving streets and constructing sewers, by which the property of specific individuals may be directly taxed to defray the expense thereof, is a judicial act; but those acts or ordinances of a municipal corporation, ordering what is enjoined upon it as a matter of duty, and which simply authorize repairs to be made, as repairing streets, bridges, and sewers, the expense of which is a charge upon the city treasury, are ministerial.

3. An ordinance passed by a municipal corporation, which it has no power to pass, as levying a tax for a purpose not authorized by its charter, is an act of usurpation, and all proceedings under it are void; but where the corporation has the power to pass an ordinance for a certain purpose, but exercises that power in an unauthorized manner, the ordinance is valid and binding until set aside by legal proceedings brought for that purpose, and its validity cannot be brought in question collaterally as a matter of defence to an action under it.

On demurrer to Pleas.

This action was brought in the Camden Circuit Court by the treasurer of the city of Camden, to recover of the defendant the expense of paving Pine street, in front of his premises, in said city.

The action was in *assumpsit*, and the declaration contained three counts: 1, for work and labor done and materials provided; 2, for money paid, laid out, and

expended; 3, for money found due on an account stated. To this declaration was annexed a schedule, which was simply a charge for paving Pine street in front of defendant's premises, and a statement added that the work was done under the direction of the city council, and paid for by the city treasurer, pursuant to an ordinance entitled, " An ordinance for the paving of Pine street, from Second to Ninth street." To this declaration the defendant pleaded the general issue and two special pleas. The substance of these pleas, and of the ordinance under which the suit was brought, is sufficiently stated in the opinion of the court. To the two special pleas, the plaintiff demurred.

The case was certified from the Camden Circuit to this court, for their advisory opinion.

Argued at June Term, 1856, before the CHIEF JUSTICE, and Justices OGDEN, HAINES, and RYERSON, by *Dudley* and *Carpenter*, for plaintiffs, and *Browning*, for defendant.

The CHIEF JUSTICE delivered the opinion of the court.

This action is brought by the treasurer of the city of Camden, to recover of the defendant the expenses of paving Pine street, in said city, in front of the premises of the defendant. The charter of the city gives the city council exclusive control over the streets of the city, and empowers them, whenever a majority in value of the landholders along any street, or part of a street, shall desire the same to be paved, on the petition of the said owners, to order and direct the same to be done. *Pamph. L.* 1850, *p.* 226, § 32. And in case the owner of any real estate shall refuse to pave in compliance with such ordinance, the council are further empowered to cause the same to be done, and to recover the costs and expenses of the work of the owner of such real estate in the name of the city treasurer. The expense of paving by the city is made a lien upon the real estate of the owner in whose behalf the work is done, and the council are empowered to sell

such real estate to defray the expenses, with interest and costs. By an ordinance of the city, passed on the 29th of June, 1854, a part of Pine street was required to be paved by the owners of real estate fronting on said street, in front of their respective lots. And it was further by said ordinance directed, that if any owner of real estate should refuse to pave, in compliance with the ordinance, it should be the duty of the street commissioner to cause the paving to be done, and to recover the costs of the owners, respectively, together with ten per cent. of the cost additional, as a penalty for neglect or refusal to pay the amount.

The defendant, being an owner of a lot on Pine street, refused to pave in compliance with the ordinance, and the paving having been done by the city, this action is brought to recover the costs and expenses of the work. The plaintiffs declare, under the authority of the charter, in *indebitatus assumpsit* for money paid, laid out, and expended by them for the use of the defendant. The defendant pleads—first, the general issue; second, that the work was done without his consent and against his will; third, that the ordinance for paving the street was passed by the city council without the petition therefor of a majority in value of the land-owners on said Pine street. To the second and third pleas the plaintiffs demur.

It is incumbent on the plaintiffs to show that the work was done at the request of the defendant, expressed or *implied*. If, under the facts of the case, his consent is implied in law, it is totally indifferent whether in point of fact he assented to the work being done or not.

The demurrer to the third plea raises the question whether the ordinance requiring Pine street to be paved, if passed by council without the petition of a majority in value of the landholders fronting on said street is void, so that the defendant may avail himself of the defence by calling its validity in question collaterally, or whether it remains in force until set aside by a direct proceeding for that purpose. It was conceded, upon the argument, that

the city council, under the charter, have no authority to pass an ordinance requiring a street to be paved, unless upon the petition of a majority in value of the landholders along said street; and that if such ordinance be passed in contravention of the charter, it cannot conclude the rights of the defendant.  But it is insisted that the power of paving the streets vested in the city council upon the petition of the land-owners, is a judicial, or *quasi* judicial power; that the ordinance requiring the paving to be done is not an exercise of mere legislative or executive functions, but is a judicial act, which cannot be called in question collaterally, and that the defendant's proper and only mode of relief is by *certiorari* to set aside the ordinance.

Whether the ordinances of a municipal corporation are subject to removal and review by writ of *certiorari*, has recently been questioned by high judicial authority; and although the point was not mooted upon the argument of this case, its importance demands consideration.  In the case of *The People* v. *The Mayor, &c., of New York*, 2 *Hill* 11, Mr. Justice Bronson, in delivering the opinion of the court, said: "The powers exercised by the common council of the city of New York are for the most part either legislative, executive, or judicial, and a *certiorari* only lies to inferior courts and officers who exercise *judicial* powers. If it were not for a few modern cases, I should be of opinion that we have no authority to supervise in' this way the acts, ordinances, and proceedings of the corporation of the city of New York, or, indeed, of any other corporation, public or private.  *  *  *  All our city and many of our village corporations have been vested with very large powers within their respective limits; and, if a *certiorari* will lie to remove into this court an ordinance for constructing a sewer, it is difficult to see where we can stop short of reviewing all their acts in the same way, which looks to me like a great stretch of jurisdiction." In the matter of *Mount Morris Square*, 2 *Hill* 14, it was held

by the same learned court (Mr. Justice Cowen delivering the opinion), that the acts of municipal corporations, if plainly judicial in their character, may be reviewed on *certiorari*. But he said a *certiorari* to reverse a mere corporate act is without precedent; though if it should be altogether destitute of authority, and followed by a judicial decision, which would therefore be void for want of jurisdiction, the corporate act might be examinable on *certiorari*, as incidentally vitiating the latter. The effect of the principle thus stated would seem to be, that if a city ordinance directs a sewer to be built and a street to be paved, and provides that the expenses of the improvement shall be assessed upon persons benefited, the assessment, being of a judicial character, may be reviewed on *certiorari*, and the validity of the ordinance thus incidentally drawn in question. But if the ordinance directs not only that the improvement shall be made, but that the expenses shall be borne by the landholders by or over whose property it may pass, the party aggrieved is not entitled to protection by the writ of *certiorari*. Whatever may be the rule upon this subject adopted in other states, it is certain that the remedy by *certiorari* in this state is more extensive and efficacious, and rests upon broader, and, as we apprehend, upon more reasonable ground.

In *Ludlow* v. *The Executors of Ludlow*, 1 *South*. 387, Kirkpatrick, Ch. Just., in delivering the opinion of the court, said: "The jurisdiction of this court is very high and transcendent. Among other things, it has the superintendence of all inferior courts, both civil and criminal, *of all corporations, in the exercise of their corporate powers*, and of all public commissioners, in the execution of their special authorities and public trusts. * * * In superintending inferior jurisdictions in the execution of public powers and authorities in which the people at large are concerned, the writ of *certiorari* can be granted at bar only, and that upon good cause shown. Of this kind of jurisdictions are all tribunals established by law for the

execution of particular public trusts, such as boards of free-holders, boards of assessors, township and county commit-tees, commissioners appointed to lay out roads, turnpikes, &c., *and all corporations of every kind, in the execution of their corporate functions,* in short all tribunals which are called extraordinary and special, in contradistinction to the ordinary and common courts established for the trial of crim-inal offences and the determination of private rights between citizen and citizen."

In *Whitehead* v. *Gray and Gedney*, 7 *Halst.* 38, Ewing, Ch. Just., citing the foregoing opinion, said, "the jurisdic-tion of this court by means of the writ of *certiorari* is, in my opinion, correctly and perspicuously laid down in Ludlow *v.* The Executors of Ludlow."

In the case of *Tucker* v. *The Freeholders of Burlington*, *Saxton* 287, Vroom, Chancellor, said, "The principle is universal, that wherever the rights of indviduals are in-vaded by the authority of persons clothed with authority to act, and who exercise that authority illegally, the persons aggrieved must seek redress by *certiorari*. It appertains to the general supervisory jurisdiction of the Supreme Court, exercising in that behalf the powers of the King's Bench, to correct abuses of that character. The same broad principle is stated and approved in *Lawton* v. *The Commissioners of Highways of Cambridge*, 2 *Caines' R.* 182; *Wildy* v. *Wash-burn*, 16 *Johns. R.* 49; *Le Roy* v. *The Corporation of New York*, 4 *Johns. Ch. R.* 356.

And although it may be true that this statement of the principle is too broad and includes within its terms a class of wrongs which are clearly not the subject of relief by *certiorari*, the principle cannot be limited, as is attempted to be done in the matter of *Mount Morris Square*, 2 *Hill* 32, to a mere review of judicial decisions. It is certain that in this state the remedy has been extended to wrongs inflicted upon individuals, whether by judicial decision, by corporate acts, or by the acts of special jurisdictions created by statute.

Thus it is habitually used as a remedy against unlawful taxation, either for state, county, township, or city purposes; and while the remedy has been denied in other states, as dangerous or prejudicial to the public welfare, no such evil has been experienced from the use of the remedy, while it has been found eminently salutary and efficacious as a protection to private rights against oppressive and illegal taxation.

It is used to test the legality of an election, *State* v. *Justices of Middlesex, Coxe* 244; *State* v. *Anderson, Coxe* 318; to test the validity of a by-law of a municipal corporation, *State* v. *Corporation of New Brunswick, Coxe* 393; to test the validity of the classing and assessing of the militia under the militia act of 1794, *State* v. *Chambers, Coxe* 400; to review the return list of delinquents, and executions issued for the collection of fines imposed for neglect of militia duty, *State* v. *Kirby*, 1 *Halst.* 143; *State* v. *Atkinson*, 4 *Halst.* 271; the laying out of a road under an act incorporating a turnpike company, *State* v. *Newark and Pompton Turnpike Co.*, 1 *Penn.* 338; the appointment and proceedings of commissioners appointed to value lands taken by corporations for their use, and to appraise damages by special statutory authority, *The State* v. *The Morris Canal*, 7 *Halst.* 365, 2 *Green* 411; *Bennet* v. *Railroad Co.*, 2 *Green* 151; *Van Wickle* v. *Railroad Co.*, 2 *Green* 164; *Smith* v. *The Trenton Delaware Falls Co.*, 2 *Harr.* 5.

One of the most familiar uses of the writ is to test the validity of the proceedings of surveyors and freeholders in laying out and confirming of public highways; though, according to some of the authorities, the laying out of streets and highways is the mere exercise of municipal or corporate power without the semblance of judicial decision.

These instances are sufficient to show that the writ of *certiorari* has long been used in this state to test the valid-

ity of the acts of corporations and of special tribunals not judicial in their character.

In the case of The State *v.* ' The Corporation of New Brunswick, the eminent counsel of the city did not question the right of a corporator, by writ of *certiorari,* to remove and try the validity of a by-law of a corporation. They insisted that the court ought not to award the writ on the prayer of an individual, without showing that he is or may be affected by the operation of the by-law, and is therefore entitled to question its validity. But the court held that a sufficient ground for the allowance of the writ was shown, the court being informed that a question as to the validity of the law was intended to be brought before them for adjudication, and that the prosecutor had been injured by the law.

Whether, therefore, the act be regarded as judicial or legislative, the *certiorari* will lie at the instance of a party aggrieved by it. The counsel of the defendant, therefore, insists, with justice, that under our practice, the mere fact that the *certiorari* will lie, cannot be a criterion of the judicial character of the act complained of; and that the question still remains, admitting the jurisdiction of the court by way of *certiorari,* whether the validity of the ordinance may not be drawn in question collaterally, as a matter of defence to an action founded upon it.

In the courts of New York and Massachusetts it seems to be well settled that the *certiorari* lies only to examine the validity of such ordinances of a municipal corporation as are of a judicial character, not such as are legislative or ministerial in their nature. In the matter of *Mount Morris Square,* 2 *Hill* 21 ; *The People* v. *The Mayor of New York,* 5 *Barb. Sup. Court R.* 43 ; *The Rochester White Lead Co.* v. *The City of Rochester,* 3 *Comst.* 466 ; *The People* v. *The Mayor of Brooklyn,* 9 *Barb. Sup. Court R.* 535 ; *Parks* v. *Boston,* 8 *Pick.* 217 ; *Fay, petitioner,* 15 *Pick.* 243.

But as to what constitutes a judicial act, the authorities are by no means agreed. The Supreme Court of New

York have repeatedly held that an ordinance directing a sewer to be built is not a judicial, but a ministerial act. 2 *Hill* 21; 5 *Barb.* 43; 9 *Ib.* 535. And this seems to be the opinion of Mr. Justice Vredenburgh, in *The State* v. *Newark*, 1 *Dutcher* 426. But in *The Rochester White Lead Co.* v. *The City of Rochester*, 3 *Comst. R.* 467, Mr. Justice Taylor, in delivering the opinion of the Court of Appeals, said the charter of the city of Rochester confers upon the common council power to cause common sewers, drains, vaults, and bridges to be made in any part of the city. The ordinance of the common council directing such public improvement is judicial in its nature, and extends immunity from private action for damages to those who perform the duty. In *Parks* v. *Boston*, 8 *Pick.* 217, the Supreme Court of Massachusetts held that the power vested in the mayor and aldermen of Boston, as to laying out or altering streets, whenever, in their opinion, the safety or convenience of the inhabitants shall require it, is *judicial* in its character. But this is questioned and pronounced anomalous by Mr. Justice Cowen, in 2 *Hill* 22.

The true principle seems to be, that ordinances directing the mere repairing or repaving of streets or reconstructing of sewers or bridges, which are enjoined upon municipal corporations as matters of duty, are purely ministerial; but that ordinances directing new streets to be opened or altered, new sewers to be constructed, or other similar public improvements to be made, by which the property of individuals is taken or affected, are in their nature judicial. So where a municipal corporation are authorized by ordinance to require the paving of streets, not as a matter of ordinary repair, but upon specified conditions only, and to impose the burthen not upon the city treasury, but upon a specific class of individuals, the ordinance is in its nature judicial. These powers and duties are in their character very similar, and in many particulars identical with those imposed by the act of parliament, (21 *Hen.* 8, *ch.* 5,) upon the commissioners of sewers in

England. The orders of these commissioners have always been held to be judicial in their character, and subject to review by *certiorari*. *Bac. Ab.*, " *Certiorari*" *B*; *Salk.* 145. *T. Raymond* 186; 1 *Lev.* 288; *Mod.* 44. The commissioners, it is true, constitute a court, (3 *Bla. Com.* 73), but this fact cannot alter the essential nature of the orders made, and the duties performed by them.

I am the more inclined to adopt this construction, from the belief that the public interests will be best promoted by holding that all ordinances of municipal corporations, not in themselves absolutely void, are valid and binding until set aside or avoided by direct legal proceedings. To permit their validity to be drawn in question collaterally at any period of time, however remote from their enactment, by any and every party affected by them, may give rise to serious embarrassment, and operate most prejudicially upon the interests of the corporation. It is manifest, too, in a case like the present, where the validity of the ordinance is to be decided by a question of fact, if drawn in question collaterally, the validity of the ordinance becomes a mere question of fact to be decided by a jury, and may in one case be held valid, and in another invalid. The safe principle, therefore, as well for the corporation as for the interests of the individual corporators, is, that the validity of the ordinance, as in case of a judicial decision, shall not be drawn collaterally in question.

· But it is further insisted, on the part of the defence, that the common council had no jurisdiction over the subject matter of the ordinance; that its passage was an unauthorized exercise of power, and that the ordinance is *ipso facto* void. If this be so in point of fact, the plea is clearly good. It was so held in *Bergen* v. *Clarkson*, 1 *Halst.* 352. In that case it was decided that all proceedings under the authority of a void by-law imposing a tax are themselves void, and such law is no justification of the acts of the person who undertakes to execute it. But in that case there was not only no legal vote for raising the

City of Camden v. Mulford.

money, but the tax was in fact levied for a purpose not authorized by the charter, and the court held that the whole proceeding was an act of usurpation and void. If in the present case the council of the city of Camden had no power to direct the streets of the city to be paved, the cases would be analogous. The ordinance directing the street to be paved, and imposing a part of the burthen upon the defendant, would be a clear act of usurpation and void. But it is not denied that the city council have the power of directing by ordinance the streets to be paved. The subject is within their jurisdiction and control. The complaint is, that they exercised an undoubted power in an unauthorized manner or without the proper authority. The requisite number of petitioners was not before them. To represent this as a want of jurisdiction or a want of power is a confounding of terms. If the Court of Quarter Sessions should appoint surveyors to lay out a public highway, and order the return of the road to be recorded, the proceedings would be clearly void, because that court has no jurisdiction of the subject matter, and no power to act in the premises. But if the Common Pleas, having jurisdiction over the subject, and power to act in the matter, should appoint surveyors to lay out a highway without petition signed by the requisite number of petitioners, the proceeding though illegal, would not be void, but would remain in force until set aside by competent authority. Such, substantially, is the case made by the defendant's plea.

The Circuit Court should be advised that the second and third pleas are invalid, and that judgment should be entered for the demurrant.

CITED in State v. Jersey City, 5 Dutch. 175, 179; State v. Inhab. of Perth Amboy, 5 Dutch. 259; State v. Jersey City, 5 Vr. 398; State v. Morristown, 5 Vr. 451.