## NIAGARA COUNTY COURT.

MARVIN H. WEBBER, appellant, agt. THE COMMON COUNCIL
OF THE CITY OF LOCKPORT.

Under the charter of the city of Lockport, an *objection* to an assessment for the
repair of a sewer, which extended the repair a distance of sixty feet beyond
which the ordinance directed, *held*, not sustainable:

*Held*, also, that the objection that the work could not be done except by contract,
and after receiving proposals, was not well taken:

*Held*, also that the objection that the work could not be done until after an assess-
ment for its cost was unavailable:

*Held*, also that the objection that the territory benefited, &c., was not sufficiently
described in the ordinance, was untenable:

*Held*, also that the objection that the principle on which the assessment was made
was wrong and unjust, was unavailable:

*Held*, that the objection that a large amount of property stated in the return to be
of the value of $24,000, was not assessed at all, for the reason that it was doubt-
ful whether it could be assessed—being mostly, school, church and city property,
was fatal to the assessment:

*Held*, also that the objection that in many cases the parcels of real estate attempted
to be assessed, were *so imperfectly* described that they could not be sufficiently
identified, was also fatal to the assessment.

*Adjourned Term, June,* 1872.

APPEAL from assessment in enlarging, &c., a sewer, on
Pine street.

G. W. BOWEN, *for appellant.*
JAMES F. FITTS, *for respondent.*

GARDNER, *County Judge,—First.* It is objected by the
appellant that the assessment is irregular and void for the
reason that the ordinance for the work only directed the
repairs of the sewer from at or near Race street to the
Hydraulic Race, a distance, commencing at the south line of

Race street of about two hundred and twenty feet, whereas the work done, and for which the assessment was made, extended to Main street, increasing the distance sixty feet.

The charter, title 3, section 8, subdivision 1, is quite general in its delegation of authority to the council on this subject, it is "to make or order, and direct the making of drains, sewers, gutters," &c.

It is probably true, as shown, that the council can only speak or make known its orders and directions by writing, but the form in which, and time when, that shall be done is not specified. In this case, it is true, the first resolution of the council, describe the work to be done as being between the Race, and a point at or near Race street. The return shows, however, that on entering upon the work it was found necessary to continue it to Main street, which was done by the agencies of the corporation, and when done was reported in its whole extent with its cost to the council which adopted the report and directed an assessment to be made for said expenses, and on the assessment being made, specifying on its face the extent of the improvement, from the Race to Main street, confirmed the same.

These proceedings under the tendency of the decisions on this question (See 17 *N. Y.*, 449 ; 8 *N. Y.*, 120, *&c.*), it is believed will be held a sufficient order and direction for the work, to sustain the proceedings to collect the compensation for it. It may be said, too, without any very strained construction, that the extent to Main street was within the terms of the resolution. The subject of the resolution was the repairs of a sewer forty or more rods in length. The repairs were to commence at or near Race street. They in fact, commenced at Main street, sixty feet from Race street. It can hardly be said that distance was at such a remove from the named point as that it cannot, looking at the extent of the work and the length of the sewer, be regarded as near it.

*Second.* The objection, that the work could not be done

except by contract, and after receiving proposals is not well taken. The necessity of this course in the opinion of the council, as contemplated by section 21 of title 5, of the charter, is presumed by the action of the council, and without any express declaration to that effect (7 *Cow.*, 585; 21 *N. Y.*, 517, &c.)

*Third.* The objection, that the work could not -be done until after an assessment for its cost is also unavailable. The charter (section 1, title 6) on this subject, is declaratory only, and the validity of the assessment is not effected by its nonobservance (*Doughty* agt. *Hope,* 3 *Denio*, 249 ; also 5 *Barb.*, 43 ; also 37 *N. Y.*, 267).

*Fourth.* The appellant's further objection, that the territory benefited, &c., is not sufficiently described in the ordinance for that purpose, is also untenable. If necessary, the two ordinances for this purpose, the one for the reconstruction of the sewer in 1866, and the present repairs should, upon the reference of the latter to the former be read together. If so read, there is no uncertainity in the description.

It has also been held, that the confirmation by the council of the assessment after that is made, is a sufficient designation of the territory benefited (*Manice, &c.* agt. *New York*, 8 *N. Y.*, 120 ; *opinion*, 130 & 131).

*Fifth.* Under the decisions, too, the objection, that the principle on which the assessment was made is wrong and unjust to the appellant and others, must be held unavailable. It is true, as it seems to me, injustice has been done by the adoption of the general and arbitrary rule acted upon by the assessors by which certain property owners, quite remote comparatively, and having no direct communication with the sewer, are made to pay equally with those in the immediate vicinity, and directly connected with it. But under the decisions, these questions must be held to be within the uncontrollable discretion of the assessors, and not open to review on appeal (15 *Wend.*, 374; 28 *Barb.*, 609 ; case of *Gardner* agt. *Common Council of Lockport*, opinion of MARVIN, *J.*, 41

*How.*, 255). In this case too, the assessors have in two or three cases, varied from the general rule, and exercised their judgment as to the benefit to each owner.

The remaining two objections, I think, should be held fatal to the assessment :

*Sixth.* One is, that a large amount of property stated in the return to be of the value of $24,000, was not assessed at all, for the reason, as the return states, that it was doubted whether it could be assessed. It is true, most of the property omitted is school, church, and city property. The ownership of the property, however, makes no difference in the just claim upon each parcel to contribute to the payment for that from which its value has been increased, or the property benefited. The exemptions under the general tax laws do not include such claims for contribution to pay for benefits received. It is claimed, and with some plausibility, that the school house property (belonging it is supposed, this the return does not show, to the union school district in the city of Lockport), is exempt from local assessment under the law (chapter 57, laws of 1847), establishing such school district. It is true, section 23 of said chapter, declares that the school houses, lots, &c., of said district " shall be exempt from all taxes and assessments." Does the terms " taxes and assessments" include assessments for purposes of this kind ? The word assessments, as used in the charter of the city, in connection with improvements of the kind in question, means the apportionment of the cost of the improvement upon the real estate benefited, or in other words, the payment of the cost of a benefit conferred. `If such words were used to convey the idea thus conveyed by the term assessment, it would not, probably be claimed, that it was the intention by the term " taxes and assessments" in the school laws referred to, to exempt the school house, &c., from such payments. Buildings for public worship, school houses, &c., are exempt from taxation by the R. S., (1*st R. S., marg. p.* 388). In the same statutes, the term, assessment, is used in connection

with and concerning the imposition of taxes. Does it mean anything more in the section 23 of the school law referred to? I think not. I think, it was not intended to extend the exemption of the school house, &c., of the school district in Lockport, beyond that of such houses generally in the state.

If not, then the exemption only extends to the payment of taxes as such, and as a consequence within the decisions does not include assessments for the purposes under consideration (*Matter of Mayor, &c., of New York*, 11 *Johns.*, 78; *Matter of Church Street in New York*, 49 *Barb.*, 455.; *Matter of Petition of Geo. C. Turfler*, 44 *Barb.*, 46).

*Seventh.* The other objection deemed fatal to the assessment. is, that in many cases the parcels of real estate attempted to be assessed, are so imperfectly described as that they cannot be sufficiently identified. These cases are set forth in paper "B," annexed to the return, by reference to which it is seen that the attempted descriptions, or most of them, fail to so define any parcel of land that it would be imposible to enforce the assessment by sales for non-payment of the assessment. In the cases referred to no title could be made by such sales (*Bayard, &c.* agt. *Healy*, 20 *Johns.*, 495; *Cumming* agt. *Mayor of Brooklyn*, 11 *Paige*, 596). This inadequacy of description is not denied by the counsel for the council, but it is insisted that the appellant cannot take advantage of it, because as is claimed, he cannot be prejudiced by it. But is that so? It is the right of all persons assessed to be able to judge whether the assessment is proportionate and just. To this end it is important to know what parcels of land, quantity, &c., are assessed. How can this be known when the description is "part of a lot" without giving the number of feet, or in any way indicating the quantity, as is the case with several of the descriptions in question. It is the real estate, not the person that is assessed. The real estate should, therefore, be described. And how can the council in passing upon the justice of the assessment, or the

appellate court in its review determine the fairness of the principle adopted by the assessors. Again, if title cannot be made on sale for non-payment of the assessment, one of the next important means for collecting the assessment is unavailable. To that extent, and in all cases where the assessment cannot be collected by the measures named, it is as if no assessment had been made. It seems to be supposed that if by reason of the non-collection of the amount assessed, or any part of it, there is a deficiency, no further assessment can be made. I do not so understand it. The charter, section 12, title 6, (amendment of '69,) provides, that in case any assessment shall prove insufficient to defray the expenses, &c., the council may direct a further assessment for the deficiency.

It is probable too, in the absence of such express authority the councils being authorized by the charter to make such improvements, and assess and collect the cost upon the property benefited, has the power to repeat the process if for any cause, unless perhaps, by some actual wrong of the council they fail to collect the necessary amount by the first assessment (*Meech* agt. *Buffalo*, 29 *N. Y.*, 188). If, by mistake one or more parcels of land should be assessed twice, and but half the amount thereof collected, or if by mistake a parcel is described that does not, in fact, exist, is there any doubt but a second assessment could be made for the deficiency thus occurring? So in this case, there is no land described in some of these assessments, and who can say what land, or that any has been assessed.

If there is a failure for any cause to raise the amount necessary, the deficiency must be paid either by a second assessment or out of the general fund, and in either case the appellant is interested as a property owner. Each of the owners made liable to contribute to the fund to pay for the improvement, are interested in having the proceedings against the others, such as will, if necessary, enforce the payment of their proportion, and if there is a material failure by

reason of defects in the assessment to accomplish that object. I think, any of the parties in interest may appeal.

For the two reasons last considered, this assessment is held defective, and the defects being such that they can only be remedied by a new assessment, this must be set aside, and a new one ordered.

NOTE. The acts relating to the city and village of Lockport, referred to in the foregoing opinion, are chapter 365, laws of 1865 ; chapter 809, laws of 1868 ; chapter 835, laws of 1869 ; chapter 307, laws of 1846.