The People of the State of New York ex rel. James D. Miller, Appellant, v. Duncan W. Peck, as Commissioner of Public Safety of the City of Syracuse, N. Y., Respondent.

*Removal of policemen in cities of the second class — the decision of the commissioner is not reviewable — remedy in case of dismissal in bad faith — the right to a pension in the city of Syracuse is not a vested right — motion to dismiss a writ of certiorari before a return.*

The office of policeman, being a legislative and not a constitutional office, it was competent for the Legislature to provide in section 184 of the charter of cities of the second class (Laws of 1898, chap. 182) that the decision of the commissioner of public safety in a city of the second class, dismissing a member of the police force, upon charges preferred against him, should be " final and conclusive and not subject to review by any court."

Such provision of the charter of second class cities is not unconstitutional as to a member of the police force of the city of Syracuse, in that it deprives him of rights in a certain pension fund which he had secured by virtue of his appointment under the former charter of the city of Syracuse, as under such former charter his position was subject to a broader power of removal than that contained in section 184 and as his appointment upon the police force did not give him any vested rights in such pension fund.

A motion to dismiss a writ of certiorari, issued to review the action of the commissioner of public safety of a city of the second class in removing a member of the police force, on the ground that the decision was not reviewable, may be made and determined before any return is made to the writ.

Semble, that if the commissioner of public safety should attempt to dismiss a member of the police force in bad faith or from improper motives and without any evidence justifying his action, the courts would entertain a proceeding to review the removal.

APPEAL by the relator, James D. Miller, from an order of the Supreme Court, made at the Onondaga Special Term and entered in the office of the clerk of the county of Onondaga on the 13th day of January, 1902, vacating and quashing a writ of certiorari theretofore granted and issued upon the petition of the relator.

The order appealed from was granted before any return to the writ had been made and filed.

*W. J. McClusky*, for the appellant.

*A. H. Cowie*, for the respondent.

HISCOCK, J.:

The writ which was quashed was issued upon the application of relator for the purpose of reviewing the decision of the defendant, as commissioner of public safety of the city of Syracuse, whereby it was held in substance that the relator, a member of the police force of said city, had been guilty of neglect of duty for which he should be and was dismissed from the force.

The important question involved upon the motion to quash the writ and upon this appeal was, and is, whether the provision of section 184, chapter 182, Laws of 1898, being "An act for the government of cities of the second class," that said decision should be "final and conclusive and not subject to review by any court," is constitutional and effective. The plaintiff by his writ attacked it as not being so. The learned judge at Special Term, by granting the

motion quashing the writ, held that it was so, and in that conclusion upon the facts presented we think he was correct and that the order appealed from should be affirmed.

The following facts presenting the question appear from the petition and affidavit upon which the writ was issued:

Relator was appointed a member of the police force of the city of Syracuse December 30, 1899, or two days before the statute above referred to, and containing the provision under discussion, took effect. Defendant having been appointed commissioner of public safety under said act, on or about November 11, 1901, issued an order to the chief of police of said city reading as follows: " I understand that the nickel-in-the-slot Klondike machines have again made their appearance, especially in the outskirts of the town. Please have your patrolman make special examination into the matter, notify people who have these machines, if there are any, that they must immediately be taken out or they will be seized. If to-morrow any are found in any place, they must be seized and brought to headquarters." Said order was concededly communicated to relator the day it was made. On or about November 15, 1901, charges were preferred by the chief of police against relator, charging him, in substance, with having failed to comply with said order, and a copy of said charges was served upon him. Thereafter said original charges were somewhat amended and amplified, being still based, however, upon the alleged above-mentioned failure of duty. Still later, and on November twenty-first, relator was placed upon trial before defendant in accordance with the statute, various witnesses being sworn in support of the charges and relator giving evidence in his own behalf. Without going into all of the details of said evidence, we think that enough did appear in support of the charges to give defendant jurisdiction to act. It appeared, amongst other things, that relator went on night duty after the order of November eleventh was communicated to him; that there was that evening in the saloon of one O'Donnell upon his beat one of the prohibited machines; that relator went into the saloon that evening, but, as he claimed, did not see said machine, and it followed, as a matter of course, that nothing was done by him to report the same to police headquarters or have it removed there. The statement of relator that he did not see the machine when other evidence showed

FOURTH DEPARTMENT, MAY TERM, 1902.          [Vol. 73.

that it was in the saloon at about the time he was there, was of course the testimony of an interested party, and, under well-settled principles of law, the commissioner had the right, if he saw fit, to rule against its truthfulness. Thereafter, and on December 10, 1901, defendant made and filed his decision in writing holding relator guilty upon the charges and removing him from the police force, which order was duly promulgated.

No complaint is made that the provisions of the statute covering the subject were not substantially complied with in preferring the charges against and trying relator. It is suggested that the amended charges above referred to were somewhat irregular in one or two respects, but we have no doubt that this irregularity was waived by relator's conduct in going to trial.

The counsel for the appellant does earnestly argue that there was no sufficient or competent evidence to warrant the conviction and removal of the relator and that it is the duty of this court to review and reverse upon the merits the decision against him.

Our disposition of the last proposition involving the main question whether defendant's decision is final and not reviewable is made easier in this case by the fact that we are unable to agree with the first contention of lack of evidence upon which he might act. There are, it is true, allegations in the petition in substance that he acted upon improper and insufficient evidence and that he was influenced by improper motives. These allegations are, however, of mere conclusions and must be subordinated in their effect to the statements of the actual proofs and facts which were produced and developed upon the hearing.

We are also to keep in mind that, upon the trial by a commissioner of charges against a policeman, the law undoubtedly permits a degree of informality in procedure and a latitude in the reception and consideration of evidence which would not be tolerated upon a regular trial in a court of law.

Measuring the evidence produced by this rule, we think, as already indicated, that there was sufficient proof of relator's failure to obey orders to authorize defendant to act and reach a conclusion of guilt if his judgment so led him.

Under such circumstances we are prepared to hold that the statute making his decision final and not subject to review is constitu-

tional and effective. For, respondent's concession that appellant would be entitled to the review sought by him in this court, except for the prohibition of the statute, clearly and narrowly presents the issue whether the latter is valid.

Section 3 of article 10 of the Constitution provides: " When the duration of any office is not provided by this Constitution it may be declared by law, and if not so declared, such office shall be held during the pleasure of the authority making the appointment." The office of policeman is not one created by the Constitution but under the acts of the Legislature. The latter body, therefore, which provided for the appointment of relator, had the power to provide for his removal and discharge. It might have indicated some method which should be summary and without any trial or hearing at all, dependent upon the will of some body or person. Instead of doing this, it had the right to provide that some person as the defendant should have the power by a decision, which should be final and not reviewable, to remove the relator, but that before such decision was reached relator should be served with charges and put upon trial. This is what it did do. It qualified and limited the absolute power which it might have given to defendant to remove relator by providing for a trial upon regular charges. The provision that the decision upon such trial and charges should be final and not reviewable was not in excess of the powers which the Legislature might exercise over relator in depriving him of his office. Upon the other hand, the entire scope of the statute, including such decision and the charges and trial which led up thereto, amplified and protected relator's rights, and are not a subject for complaint by him.

It is not necessary for us to hold, and we do not hold, that there might not be a case where the conduct of the commissioner of public safety in removing a policeman might be so manifestly colorable and governed by improper motives and unsupported by evidence that it would be the subject of review by this court. The statutory provisions to which we have referred are intended to, and do, secure to a member of the police force notice of charges against him and a trial thereupon. He is undoubtedly entitled to have a substantial compliance with these statutory provisions, and is undoubtedly entitled to insist that the decision must not be made removing

him without some evidence to support it. The courts would unques-
tionably, as they should, find opportunity to review the actions of a
commissioner of public safety who should attempt to disregard the
statutory provisions intended for the benefit of those under him, or
who should attempt in bad faith or from improper motives and
without evidence to dismiss one of them. As we have indicated,
we cannot see that the present was such a case. While it is pos-
sible, as suggested by relator, that some ulterior motive underlay
the proceeding against him, the statements to that effect in his peti-
tion are of conclusions and not of facts which permit us to find such
a condition to have existed.

The views expressed upon this question are in accordance with
those already laid down in another Appellate Division. (*People ex
rel. Graveline* v. *Ham*, 59 App. Div. 314.)

It is further urged that the statutory provisions above considered
are in derogation of rights which relator had secured by virtue of
his appointment under a prior charter in and to a certain pension
fund. We think, however, that this contention also must fail.

Under the prior charter of the city of Syracuse (Laws of 1885,
chap. 26, § 220) it was provided that the board of police commis-
sioners, or a majority of them, might " remove from office   *   *   *
any policeman *   *   *   for any cause deemed sufficient to them
or a majority of them," they being simply required to " forthwith
make and transmit to the common council of said city, to be
entered upon their minutes, a statement in writing signed by them,
or such majority of them, of their reasons for such removal." It
will thus be seen that the provisions in effect at the time of rela
tor's dismissal did not narrow but rather enlarged his rights to
protection from unjust dismissal.

When plaintiff, therefore, received his appointment and became
contingently interested in the pension fund created under a statute
(Laws of 1892, chap. 509) supplemental to said charter, it was sub-
ject to a power of removal even broader and more complete than
that of which he now complains. Furthermore, it is well settled
that the appointment to an office such as he held is not to be
regarded in any sense as a contract or grant of vested rights, but
is subject to legislative enactment changing or curtailing its period
of duration. (*Conner* v. *Mayor*, 5 N. Y. 285; *Smith* v. *Mayor*,

37 id. 518; *Long* v. *Mayor*, 81 id. 425; *People ex rel. Gere* v. *Whitlock*, 92 id. 191.)

Lastly, it is urged that this motion to dismiss the writ should not have been made or granted until after the return thereto had been filed, and various cases are cited to support this contention. We see no reason for such a rule. This motion was made upon the writ itself and upon the papers upon which it was granted. It was in the nature of a demurrer. It challenged the right of relator to any relief, assuming that all the allegations in his papers were true. For the purpose of settling such an issue no return was necessary, and it seems proper and desirable that there should be an opportunity in such manner to raise the issue as to the sufficiency of the papers upon which the writ was granted.

While some earlier cases are cited by appellant which seem to sustain his contention, all of those were decided prior to the adoption of section 2133 of the Code, and we have no doubt that under that section the motion was proper. (*People ex rel. McNeary* v. *MacLean*, 64 Hun, 205.)

The order appealed from should be affirmed, with ten dollars costs and disbursements.

McLENNAN, SPRING, WILLIAMS and DAVY, JJ., concurred.

Order affirmed, with ten dollars costs and disbursements of this appeal.