Greenbaum, J.
This is a motion made by the public service commission for the first district to quash a writ of certiorari obtained by the city of New York to review an order made by the commission on July 15, 1919, authorizing the receiver of the New York Railways Company to charge two cents for transfers on its lines, to continue in effect up to and including July 7, 1920, and also an order made on October 1, 1919, denying the relator’s application for a reversal or modification of the order of July fifteenth. The preliminary objection raised by the relator, the city of New York, that the motion is prematurely brought because made before the return to the writ, is not well taken. As was said in People ex rel. Brooklyn Heights R. R. Co. v. Public Service Commission, 101 Misc. Rep. 10, 11; affd., 180 App. Div. 895, “It is well settled that the writ of certiorari is a discretionary writ, and that a motion may be made to quash the same, either upon the papers upon which it was granted or upon additional affidavits, and either before or after the return thereto.” The order of the public service commission now under consideration reads (the *226 italicizing being the court’s): “ Ordered that from the date of this order to and including the 7th day of July, 1920, unless hereafter extended by order of the commission, the receiver of the New York Railways Company and the said New York Railways be, and they hereby are and each of them is, authorized to charge in addition to the regular fare two cents for each transfer demanded by a passenger desiring to make one continuous trip or to take one continuous ride between any two points on the lines, owned, operated or controlled by the said New York Railways Company or its receiver according to the local and joint passenger tariff No. 1 of said company issued and filed under the order of the Public Service Commission for the First District and effective June 1, 1918, except in the case of transfers required by the terms of a municipal franchise, agreement or consent, it being the purpose and intent of this order to authorise the receiver or the company to charge for transfers at and only at such points as the commission is empoivered by law to authorise them to charge for transfersThe principal grounds upon which the motion is based are (1) that the city of New York is not a party aggrieved by the determination to be reviewed, since all franchises, whether granted by the city or by its predecessor corporations, and whether granted before or after 1875, are expressly excluded from the operation of the order; and (2) that the petition is insufficient to justify the issuance of the writ. The relator insists that this order constitutes a violation of the terms of various franchises previously granted by the city, which it alleges require the issuance of free transfers at numerous points on the New York Railways Company’s lines. It is conceded by the receiver and by the commission that 14 of such transfer points come within the protection of municipal franchises, but it is a disputed *227 question as to whether or not the other 99 of the 113 points where free transfers were given up to the date of the issuance of the order are covered by any franchises granted by the city. It is plain from a reading of the order of July fifteenth that according to its express terms no rights of the city are affected thereby. The relator appears to attach considerable importance to International Railway Co. v. Rann, 224 N. Y. 83; Matter of Quinby v. Public Service Commission, 223 id. 244, and other cases which in effect hold that where the city has by the granting of franchises or otherwise entered into contracts with a public service company the public service commission has no authority to pass regulations which will interfere with such pre-existing contract rights. Such holdings are indisputably sound and are not questioned by the respondent here. They are, however, inapplicable to the situation now under consideration, because whatever contract rights the city may have are by the express terms of the order excepted from its operation. A sufficient answer to the relator’s contention that it is affected in its ultimate proprietary capacity as owner of the city streets, under sections 71-74 of the Greater New York charter, is that no rights of the city in its highways are impaired, since the transfer charge is not in violation of any contract rights of the city reserved in connection with the use thereof. Turning to the petition itself upon which the writ was originally granted, we find that it is totally devoid of allegations of any facts which might tend to show that the commission did not have before it competent proof of all the facts necessary to be proved in order to authorize the making of the determination. Section 49, subdivision 1, of the Public Service Commissions Law authorizes the commission ‘ ‘ Whenever (it) shall be of opinion * * * that the maximum rates, fares or charges collected *228 or charged by any such common carrier, railroad or street railroad corporation are insufficient to yield reasonable compensation for the service rendered, and are unjust and unreasonable ” to “ determine the just and reasonable rates, fares and charges to be thereafter observed * * * with due regard, among other things, to a reasonable average return upon the value of the property actually used in the public service,” etc. The recitals in the petition that ‘ ‘ the orders of July 15 and October 1, 1919, were made without adequate or competent proof ” and that “ the receiver * * * failed to submit proper, competent or adequate proofs that the proposed increased rate was just or reasonable,” are mere conclusions. See People ex rel. Miller v. Peck, 73 App. Div. 89, 92. The allegation that“ the receiver in the present case failed to submit any proof of the value of the properties of the New York Railways Company or of the individual companies within the system ” is impaired by the statement in the next succeeding sentence that “ the receiver, over your petitioner’s objection, introduced during the course of this proceeding an appraisal purporting to be an appraisal of the properties of the New York Railways Company made in a previous case.” The objection that this appraisal did not include the inventories upon which it was based, although possibly going to the weight of such evidence, does not make such proof inadmissible and does not therefore render it impossible for the Appellate Division to find that there was “ competent proof of all the facts, necessary to be proved, in order to authorize the making of the determination ” (Code Civ. Pro. § 2140), particularly in the light of section 20 of the Public Service Commissions Law, which provides that “ in all investigations, inquiries or hearings the commission or a commissioner shall not be bound *229 by the technical rules of evidence.” It seems to the court that on a motion to quash certiorari only the petition for the writ need be examined on principles analogous to, although possibly not precisely identical with, those on a motion for judgment on the pleadings, in order to ascertain whether the petitioner has made out a prima facie case for the issuance of the writ. If, however, it were proper, in view of the fact that the interests of the public are involved, to consider the statements embodied in the moving and answering affidavits, the conclusions above set forth are only strengthened and reinforced. It appears from the moving affidavits that the commission had before it, in addition to a rough estimate of the value of the property of the New York Railways Company of $45,000,000 made by Dr. Bemis, one of the city’s experts, two other estimates, one complete and the other partial, each compiled after exhaustive study of the properties in question. The moving affidavits show that at the hearing the receiver introduced in evidence an appraisal, prepared by the firm of Ford, Bacon & Davis, consulting engineers, showing that the estimated cost of reproduction new, based on normal average pre-war prices and excluding working capital, was $87,030,664 and that this estimated cost of reproduction, after depreciation had been deducted from it, was $68,768,815. It further appears that Charles W. Kellogg," who was connected with the firm of Stone & Webster, testified that he had at the request of the solicitor for the receiver made up an incomplete list of tangible properties which could be easily seen, and disregarding all intangible property, and that the reproduction cost of this incomplete list of property, exclusive of any overhead expenses, engineering costs and supervision, was about $56,000,000, and that taking such property as might be subject to depreciation, and *230 depreciating it by an amount of fifty per cent, regardless of whether depreciation had accrued or not, the value of this restricted list of property was in excess of $36,000,000. In an answering affidavit of Dr. Bauer, one of the city’s experts, that gentleman states that, taking into account a theory which he calls “ functional obsolescence ” he “ sincerely doubts whether the maximum present value of the property exceeds $20,000,000, and believes it is less.” This is the nearest approach to a statement of the relator’s idea of the value of the property, and nowhere, either in the petition or affidavits of the relator, is there the slightest pretense of setting forth facts which would tend in any way to indicate that accepting this lowest figure as to the value of the property advanced by any of the parties to the proceeding, the added annual revenue, estimated at $748,249.99, which will be received by the New York Railways Company by reason of the two-cent transfer charge authorized by the commission, will be more than sufficient to afford the company “ a reasonable average return upon the value of the property actually used in the public service and to the necessity of making reservation out of income for surplus and contingencies.” Pub. Serv. Com. Law, § 49, subd. 1. It cannot be said that the refusal of the commission to grant the relator an adjournment in order to enable it to prepare and to introduce an appraisal of its own of the property of the New York Railways Company, involving very probably a delay of many months, was so unreasonable that it must now be held as matter of law that the determination of the commission was not made with due regard * * * to a reasonable average return upon the value of the property * * If the commission were not given discretion to pass upon such application for an adjournment, its efficiency and *231 promptness of action as a practical matter might be largely weakened. The questions “ involving the merits,” upon which the decision of the Appellate Division upon a writ of certiorari is to be based, are defined in section 2140 of the Code of Civil Procedure as follows:
“ 1. Whether the body or officer had jurisdiction of the subject matter * * * under review.
“ 2. Whether the authority, conferred on the body or officer, in relation to that subject matter, has been pursued in the mode required by law, in order to authorize it or him to make the determination.
“ 3. Whether in making the determination any rule of law, affecting the rights of the parties thereto, has been violated, to the prejudice of the relator.
“ 4. Whether there was any competent proof of all the facts, necessary to be proved, in order to authorize the making of the determination.
“5. If there was such proof, whether there was, upon all the evidence, such a preponderance of proof, against the existence of any of those facts, that the verdict of a jury, affirming the existence thereof, rendered in an action in the supreme court, triable by a jury, would be set aside by the court, as against the weight of evidence.”
Although this court of course has no jurisdiction to pass upon the merits of the above questions, even should it desire to do so, it is not only proper for it but incumbent upon it to determine upon this motion in the first instance whether it appears from the petition that a prima facie case is established which would under any possible interpretation of the facts as therein alleged warrant the appellate court in answering any of the first four of the above questions in the affirmative. As to the first question, the jurisdiction of the commission over the subject matter under *232 review is amply secured by section 49 of the Public Service Commissions Law, subdivisions 1 and 7. As to question 2, the only allegation of the petition which could be construed as bearing thereon is the claim that the application of the receiver was defective and void in that it violated section 20 of the Public Service Commissions Law and section 15 of the rules of the commission promulgated February 18, 1918. Section 29 of the Public Service Commissions Law provides as follows: ‘ ‘ Unless the commission otherwise orders no change shall be made in any rate, fare or charge, or joint rate, fare or charge, which shall have been filed and published by a common carrier in compliance with the requirements of this chapter, except after thirty days’ notice to the commission and publication for thirty days, as required by section twenty-eight of this chapter, which shall plainly state the changes proposed to be made in the schedule then in force, and the time when the changed rate, fare or charge will go into effect; and all proposed changes shall be shown by printing, filing and publishing new schedules or shall be plainly indicated upon the schedules in force at the time and kept open to public inspection. The commission, for good cause shown, may allow changes in rates without requiring the thirty days ’ notice and publication herein provided for, by duly filing and publishing in such manner as it may'direct an order specifying the change so made and the time when it shall take effect.” Section 15 (b) of the rules of the commission reads: “ Changes in schedule may be permitted by the commission on less than the regular thirty days’ notice, but such permission will be granted only in cases where actual emergency or substantial merit is shown, or where the change reduces a rate. Application, duly verified, for permission to put in force a schedule or revised or additional sheets on less than thirty days’ *233 notice shall he addressed to the Public Service Commission for the First District, State of New York, in the form prescribed in section 22 of these regulations, and must be over the signature of the officer charged with the preparation, posting and filing of schedules, specifying title. Action will be taken only on receipt of a verified application.” No fact is alleged which shows wherein the provisions just quoted have been violated, and the allegations of their violation are, therefore, bald conclusions of law, which merit no further consideration. If, however, the merit of the relator’s contention in this regard were to be considered upon the statements in its brief, the contention appears to be that the application was defective in that it failed to specify the exact points at which permission was sought to collect charges for transfers, and thus to give notice to the commission and to the public of the nature of the proposed changes in tariff schedules, including each transfer point, etc. This contention may be answered by saying that nowhere in the section or rule referred to is there any requirement that the place where the proposed charge is to be imposed need be stated; nor is it shown that the commission is without jurisdiction to increase the rates by a blanket order granting permission to charge for transfers at any points where such transfers may lawfully be imposed. It does not appear that the requirements of section 15, subdivision b, of the rules of the commission, providing for the form of the application for permission to put new rates into effect on less than thirty days’ notice, cannot be waived by the very commission which itself promulgated the rule. Indeed, it has been held that it is no ground for objection that in conducting its proceedings a municipal corporation did not conform to rules established by itself to carry into effect the powers conferred upon it. See Mayor *234 v. Albany, 23 Wend. 277, 280. In this case the commission by the very order now under review has “ otherwise ordered,” as authorized by the express terms of section 29 of the Public Service Commissions Law, supra, with respect to the time when the change in rates in question shall take effect. In any event, the court has not a copy of the receiver’s application before it, nor is it incorporated in the petition by reference thereto. In this connection it may be pertinent to refer to the following statement in People ex rel. Moore v. Mayor, 5 Barb. 43, 49: " Before allowing or acting upon the writ, the court should be satisfied that it is essential to prevent some substantial injury to the applicant. * * * It should seldom, if ever, be allowed to enable a party to.take advantage of mere technical objections.” The allegations of the petition bearing on the questions " whether in making the determination any rule of law affecting the rights of the parties thereto has been violated to the prejudice of the relator,” and “ whether there was any competent proof of all the facts necessary to be proved in order to authorize the making of the determination,” have been considered in an earlier part of this opinion. No point is raised by the relator with reference to question 5, which plainly deals only with the ultimate question to be decided by the Appellate Division and which involves no preliminary question for the consideration of this court. The motion to quash the writ must be granted.
Motion granted.