(30 Misc. Rep. 409.)

PEOPLE ex rel. ROTHE et al. v. CITY OF SYRACUSE.

(Supreme Court, Special Term, Onondaga County. February, 1900.)

1. STREET IMPROVEMENT—STREET FRONTAGE—INTERSECTING STREETS.

In computing the total frontage included in a proposed street improvement, the width of intersecting streets should not be counted.

2. SAME—PETITIONERS—WITHDRAWAL.

Syracuse City Charter, § 139, provides that a petition for a proposed street improvement must be presented, in writing, by at least one-third of the property owners on a street, before it can be made; and section 141 forbids any person from withdrawing his name from such a petition for three months after its presentation. A petition was presented in May, 1897, but did not contain the requisite number of names. In July, 1898, it was withdrawn, and additional names secured, without notice to the original petitioners. In July, 1898, a part of the original petitioners withdrew their names; and in December, 1898, before any contract had been made for the improvement, other original petitioners also withdrew their names. Held, that the original petitioners were entitled to withdraw, as more than three months had elapsed since the original filing of the petition, and, in the absence of notice, they were not bound by the second filing.

3. SAME—PROPERTY OWNED BY CITY—CONSENT OF CITY TO IMPROVEMENT.

Syracuse City Charter, § 139, requires a petition in writing by the owners of one-third of the front feet or one-third of the owners of property fronting on a street, for an improvement, before it can be made. The city council, after a petition had been presented to pave a street on which it owned 800 front feet of property, passed a resolution to make the improvement, and advertised for bids for the work. Held, that such act was not sufficient to include the 800 feet owned by it, in computing the requisite one-third of the property, since the city must give its consent like any other petitioner, and it should have had the petition signed by the proper authorities.

4. SAME—CERTIFICATE OF ASSESSORS—WITHDRAWAL OF NAMES.

Under Syracuse City Charter, § 141, making the certificate of the assessors conclusive as to the sufficiency of a petition filed to improve a street, such certificate cannot validate a petition made insufficient by a withdrawal of names subsequent to the filing of the certificate.

Certiorari by the people, on the relation of Philip Rothe and others, to review proceedings taken to effect a proposed street improvement in the city of Syracuse. Judgment for relators.

F. B. Gill, for relators.

James E. Newell, for defendants.

HISCOCK, J. May 10, 1897, a petition was presented to the common council of Syracuse, asking for the paving of McBride street, between James and Ash streets. It was signed by the owners of 1,973.65 feet of lands fronting upon the line of the proposed improvement. Said petition was referred to the highway committee of said council May 12, 1897. Some time thereafter, and prior to June 6, 1898, and before any further proceedings based upon said petition were taken, the same was withdrawn by some person other than plaintiffs from the common council, some additional names secured, and it was again on said last-mentioned date presented to said council. Upon June 11, 1898, the board of assessors attached

to said petition their requisite certificate that a sufficient number of property owners had signed the same to authorize the undertaking of said improvement by the defendant.    June 27, 1898, the highway committee reported favorably upon the petition, and its report was adopted by the council June 27, 1898.    July 5, 1898, the council passed a resolution declaring its intention to pave McBride street, as petitioned, and directing the clerk to serve the requisite notices upon the property owners affected, and which notices were served September 21st following.    July 15th, and before their service, four of the persons who originally signed the petition, and who owned at least 200 feet of land fronting upon said street, filed notice with the city clerk withdrawing their names from said petition, and objecting to the letting of a contract based thereon.    October 3, 1898, to November 21, 1898, the council took the prescribed proceedings by which they secured bids for the work, and authorized the mayor and city clerk to enter into a contract for paving said portion of said street with Trinidad asphalt.    December 2, 1898, persons owning 251.65 feet front of property upon the line of the proposed improvement filed a notice withdrawing their names from said petition, and objecting to the letting of the contract.    Most, if not all, of the persons who filed notices upon July 15th and December 2d, withdrawing their names as above stated, are relators in this proceeding.    January 9th the council fixed at $34,900 the amount to be raised by assessment for defraying the expenses of said improvement, and directed the assessment thereof.    Such assessment would be a local one upon the property fronting upon the street.    No contract has been let.

The construction of two sections of defendant's charter, which relate to this subject, are especially involved herein.    Section 139 provides as follows:

"Before any local improvement shall be undertaken, except for the construction, repair or reconstruction of sidewalks, it shall be necessary for the owners of at least one-third of the total number of front feet, lineal measurement, or at least one-third in number of the owners of the property on the street or part of a street in or upon which the proposed improvement is to be made, to petition, request or consent, in writing, for the making thereof.    Upon the receipt of any such petition, request or consent for any local improvement, the common council, if it shall determine to make the improvement asked for, shall cause a printed or written notice of the proposed improvement to be served on the persons owning property fronting upon the street or part of a street in or upon which such improvement is proposed to be made; such notice shall be served upon the owner personally," etc.    Laws 1899, c. 362.

## Section 141 provides as follows:

"Before the common council shall direct the service of the notices aforesaid, it shall be the duty of the assessors, or a majority thereof, to examine such petition or consent and certify that the number of owners required by section one hundred and thirty-nine have signed the same, which certificate shall be indorsed upon said petition and shall be final and conclusive evidence of that fact.    No person signing a petition, request or consent shall be counted or considered upon a remonstrance against the improvement petitioned for, requested or consented to by him; nor be permitted to withdraw his name from such petition, or revoke such request or consent, within three months after the presentation of such petition, request or consent to the common council."    Laws 1893, c. 531.

These undisputed facts appear in the case:

|  | Feet. |
|---|---|
| Total frontage of property upon line of proposed improvement, exclusive of intersecting streets and park property owned by defendant. . | 4,532.50 |
| Width of intersecting streets........................................ | 628.52 |
| Frontage of park owned by defendant............................. | 886.00 |
| Total ............................................................. | 6,047.02 |

I do not think, however, that the width of intersecting streets is to be counted in such a computation as this. The sensible interpretation of the charter provision upon this point would seem to be that consent should be given in behalf of a certain amount of the property upon the line of the proposed improvement which could and would be assessed for the expense thereof. There are objections to assessing one street for paving another one which it crosses, and it will not be done. Smith v. City of Buffalo, 159 N. Y. 427, 54 N. E. 62. Authority for not counting or including said intersecting streets in the computation of frontage is found in Wright v. City of Tacoma (Wash.) 19 Pac. 42. Making this deduction, therefore, we have left a total frontage of 5,418.50 feet, and of which one-third would be 1,806.16. The petition, as finally presented to the council in June, 1898, with the second lot of names, covered 1,973.65 feet of frontage, or more than enough. If, however, the persons who had signed said petition were entitled to withdraw therefrom and cancel their consent, as they attempted to, to the extent of 200 feet by the notice served July 5th, and to the extent of 251.65 feet by the notice served December 2d, it is clear that the consents evidenced by the petition have been reduced below the requisite amount. I think they had the right so to do. It is not disputed, nor do I think it well could be, that a person signing the petition for this improvement would have the right to withdraw his name, and thereby revoke his consent to such improvement, except as prohibited by statute, or by the accruing and vesting of rights upon the strength of his consent which would make the withdrawal of the same inequitable. Concededly, no rights based upon this petition to have this improvement proceed had accrued in favor of anybody at the date (July 15th) when the first lot of property owners sought to withdraw their names. They certainly acted with promptness. They never had actual notice of the withdrawal of the petition from the common council after its original presentation, or of the attempt to secure additional names, or of any proceedings based upon the resubmission of such petition. The second lot of property owners attempting to withdraw their names in December acted less promptly, but still I think no rights had accrued which prevented such withdrawal. It is true that the common council had advertised for bids, and had accepted one, and authorized the city authorities to enter into a contract based thereon. It was provided, however, that the city could make no contract for such an improvement as this until the assessment for the expense thereof had been confirmed, and the assessment roll delivered to the treasurer. Laws 1895, vol. 2, pt. 2, p. 1970. It was the obvious intention of this provision that the city should not become bounden

upon a contract for a local improvement until it was settled that its assessment would stand, whereby it expected to collect the money with which to meet such contract. In fact, the counsel for the city does not claim that said property owners are prevented by anything, except the statutory provision already quoted, from withdrawing their names. That provision prohibits such withdrawals from a petition for a period of three months after its presentation. The second withdrawals were distant by more than three months from the presentation of the petition upon the second and final occasion. At the time of the first withdrawals less than three months had elapsed since such last presentation, but much more than that period since the original presentation. And I suppose it is claimed upon the part of the city that the action of these first property owners is to be tested by the date of the second, rather than of the first, presentation. I am unwilling to so hold. The petition, as originally presented, was incomplete and insufficient to authorize the improvement. It is true that it was nugatory and invalid for that purpose. It was, however, the only presentation to which these property owners can be said to have been parties. It may be assumed that they were parties to and knew of this, and were to be charged with the consequences of it. They knew nothing of its withdrawal, and of the attempt to utilize it by a second presentation more than a year afterwards, and they promptly disavowed their willingness to be bound thereby when they learned of it. It is true that a person signing a petition of this kind may at the time expressly limit the length of its life as against him, and thus guard against its use long after he expected it to take effect, if at all, and long after the conditions which secured his signature to it have ceased or changed. Property owners, however, seldom think of or take this precaution. It is not now before me to decide how long a petition for a pavement signed to-day may be allowed to lie dormant, and then be resurrected as a basis for a contract with some paving company. This case, however, does involve the question of whether this period of three months within which a property owner may not withdraw his consent to a pavement which perhaps he has ceased to desire is to be reckoned from a presentation of a petition of which he knew, or from the date of another one, made many months later, and of which he knew nothing. Upon that question I have no hesitation in giving that construction which is most favorable to the property owner desiring to withdraw, and which will protect him against a city government attempting to impose upon him the cost of an expensive pavement some two years after he has ceased to ask for it.

It is, however, urged that the city of Syracuse, which owned over 800 feet of park property upon this portion of McBride street, had a right to join in a petition for this improvement in behalf of that frontage; that what its common council did by way of resolving to build this pavement, etc., amounted to the necessary consent; and that, therefore, this 800 and more feet should be counted in favor of the improvement. Of course, if this should be done, there

would be the requisite consent of property owners, even after those desiring to withdraw were counted out. I see no reason why the city should not be allowed to make a consent to such a local improvement as this for property on its proposed line, and which would be assessable for the expense thereof, the same as lands owned by other owners. The question in this case is whether the city has given the required and necessary consent, assuming that it had the right so to do. The statute provides that, before any local improvement of this kind can be undertaken, it shall be necessary for the specified number of property owners "to petition, request or consent, in writing, for the making thereof." Upon the receipt of any "such petition, request or consent," it is made the duty of the common council "if it shall determine to make the improvement asked for," to cause certain notices to be served upon property owners, etc. Before said notices can be served, however, it is the duty of the assessors "to examine such petition or consent," and certify that the requisite number of property owners had "signed the same," and which certificate is to be "indorsed upon said petition." The only things from which a consent to this improvement by the city can be inferred are the resolutions of the common council, declaring its intention to make the improvement, and otherwise leading up to the making of a contract therefor as heretofore detailed. I do not think such acts are sufficient. The statute requires that there shall be a petition, request, or consent in writing by the property owner. A mere resolution hardly complies with that requirement. Further than that, it is the clear intention of the statute to make the petition presented the measure and test of the sufficiency of consents. That is made the basis of all proceedings. The assessors are required to act upon and be governed by that in determining whether enough have consented. It presents something definite for the inspection of interested property owners. If the city desires to favor the improvement, I see no reason why it should not clearly indicate this, by executing through the proper authorities a consent such as other owners are required to execute, rather than inferentially by its action upon the petition which others have signed and presented. I do not think that the proceedings by the common council in this matter, independent of the requirement of a consent in writing, can be fairly construed as an original consent or request in behalf of the city, upon which this pavement could be laid. The plain interpretation of its acts is that they were based upon and limited by the petition theretofore presented by the other property owners, and not that they were designed to add a consent for 800 feet, and thereby charge the city with an expensive improvement not otherwise authorized.

Counsel have discussed more or less the effect of the provision making the certificate of the assessors that the requisite number of owners had signed the petition "final and conclusive of that fact." I do not regard that question as very material here. This certificate was simply as to the original sufficiency of the petition. There is no question about that. Its present insufficiency has been brought about by the withdrawal of some of those who originally

signed it. The certificate of the assessors did not prevent or affect the results of such withdrawals.

The foregoing views lead to a decision in favor of the relators, and against the proposed improvement and assessment. Ordered accordingly.