PEOPLE ex rel. MILLER v. PECK, Public Safety Com'r.

(Supreme Court, Appellate Division, Fourth Department.    May 13, 1902.)

1. MUNICIPAL CORPORATIONS—POLICE—REMOVAL — TRIAL BEFORE COMMISSIONER—EVIDENCE—INTERESTED PARTY.

The Syracuse commissioner of public safety, on a hearing authorized by Laws 1898, c. 182, § 184, of a policeman charged with neglect of duty in failing to remove a slot machine from a saloon, may disbelieve the testimony of the policeman that, though in the saloon on a certain day, he failed to see the machine; the policeman being an interested party.

2. SAME—PROCEDURE.

The procedure at such hearing is more informal and the latitude in the reception and consideration of evidence greater than in a regular trial in a court of law.

3. SAME—COMMISSIONER'S DECISION—FINALITY—STATUTE — VALIDITY — POWER OF LEGISLATURE.

Laws 1898, c. 182, § 184, provides that the decision of the commissioner of public safety of Syracuse removing a policeman for neglect of duty, after hearing, shall be final, and not subject to review. Const. art. 10, § 3, provides that the duration of any office not provided by the constitution may be held during the pleasure of the authority making the appointment. Held that, as the office of policeman was not a constitutional office, the statute was not invalid as being beyond the power of the legislature.

4. SAME—STATUTE—CONSTRUCTION.

The statute does not preclude a review of such removal when the proceedings are not in accordance with the procedure specified in the statute.

5. SAME—RIGHT TO OFFICE.

A removal, under such statute, of a policeman appointed before it went into effect, is not in derogation of the rights of the policeman under a prior charter (Laws 1885, c. 26) § 220, authorizing a removal of such officer by the police commissioners for any reason deemed sufficient to them, as the security of the policeman against unjust dismissal has been broadened, and there is no vested right in such an office.

6. CERTIORARI—MOTION TO DISMISS—TIME OF FILING—NECESSITY OF RETURN.

A motion to dismiss a writ of certiorari, being in the nature of a demurrer, may be made and granted before return has been made to the writ.

Appeal from special· term, Onondaga county.

Certiorari by the people, on the relation of James D. Miller, against Duncan W. Peck, as commissioner of public safety of the city of Syracuse. From a judgment vacating the writ, the plaintiff appeals. Affirmed.

Argued before McLENNAN, SPRING, WILLIAMS, HISCOCK, and DAVY, JJ.

W. J. McClusky, for appellant.
A. H. Cowie, for respondent.

HISCOCK, J. The writ which was quashed was issued upon the application of relator for the purpose of reviewing the decision of the defendant as commissioner of public safety of the city of Syracuse, whereby it was held, in substance, that the relator, a member of the police force of said city, had been guilty of neglect of duty for which he should be and was dismissed from the force. The important question involved upon the motion to quash the writ and upon this appeal

was and is whether the provision of section 184, c. 182, Laws 1898, being "An act for the government of cities of the second class," that said decision should be "final and conclusive and not subject to review by any court," is constitutional and effective. The plaintiff, by his writ, attacked it as not being so. The learned judge at special term, by granting the motion quashing the writ, held that it was so, and in that conclusion, upon the facts presented, we think he was correct, and that the order appealed from should be affirmed.

The following facts, presenting the question, appear from the petition and affidavit upon which the writ was issued: Relator was appointed a member of the police force of the city of Syracuse December 30, 1899, or two days before the statute above referred to, and containing the provision under discussion, took effect. Defendant, having been appointed commissioner of public safety under said act, on or about November 11, 1901, issued an order to the chief of police of said city reading as follows:

"I understand that the nickel-in-the-slot Klondike machines have again made their appearance, especially in the outskirts of the town. Please have your patrolmen make special examination into the matter; notify people who have these machines, if there are any, that they must immediately be taken out, or they will be seized. If to-morrow any are found in any place, they must be seized, and brought to headquarters."

Said order was concededly communicated to relator the day it was made. On or about November 15, 1901, charges were preferred by the chief of police against relator, charging him, in substance, with having failed to comply with said order, and a copy of said charges was served upon him. Thereafter said original charges were somewhat amended and amplified, being still based, however, upon the alleged above-mentioned failure of duty. Still later, and on November 21st, relator was placed upon trial before defendant in accordance with the statute, various witnesses being sworn in support of the charges, and relator giving evidence in his own behalf. Without going into all of the details of said evidence, we think that enough did appear in support of the charges to give defendant jurisdiction to act. It appeared, amongst other things, that relator went on night duty after the order of November 11th was communicated to him; that there was that evening, in the saloon of one O'Donnell, upon his beat, one of the prohibited machines; that relator went into the saloon that evening, but, as he claimed, did not see said machine, and following, as a matter of course, nothing was done by him to report the same to police headquarters, or have it removed there. The statement of relator that he did not see the machine, when other evidence showed that it was in the saloon at about the time he was there, was, of course, the testimony of an interested party, and under well-settled principles of law the commissioner had the right, if he saw fit, to rule against its truthfulness. Thereafter, and on December 10, 1901, defendant made and filed his decision in writing, holding relator guilty upon the charges, and removing him from the police force, which order was duly promulgated.

No complaint is made that the provisions of the statute covering the subject were not substantially complied with in preferring the charges against and trying relator. It is suggested that the amended

charges above referred to were somewhat irregular in one or two respects, but we have no doubt that this irregularity was waived by relator's conduct in going to trial. The counsel for the appellant does earnestly argue that there was no sufficient or competent evidence to warrant the conviction and removal of the relator, and that it is the duty of this court to review and reverse upon the merits the decision against him. Our disposition of the last proposition involving the main question whether defendant's decision is final, and not reviewable, is made easier in this case by the fact that we are unable to agree with the first contention of lack of evidence upon which he might act. There are, it is true, allegations in the petition, in substance, that he acted upon improper and insufficient evidence, and that he was influenced by improper motives. These allegations are, however, of mere conclusions, and must be subordinated in their effect to the statements of the actual proofs and facts which were produced and developed upon the hearing. We are also to keep in mind that upon the trial by a commissioner of charges against a policeman the law undoubtedly permits a degree of informality in procedure and a latitude in the reception and consideration of evidence which would not be tolerated upon a regular trial in a court of law. Measuring the evidence produced by this rule, we think, as already indicated, that there was sufficient proof of relator's failure to obey orders to authorize defendant to act and reach a conclusion of guilt if his judgment so led him. Under such circumstances we are prepared to hold that the statute making his decision final, and not subject to review, is constitutional and effective; for respondent's concession that appellant would be entitled to the review sought by him in this court except for the prohibition of the statute clearly and narrowly presents the issue whether the latter is valid. Section 3, art. 10, of the constitution provides:

"When the duration of any office is not provided by this constitution, it may be declared by law, and, if not so declared, such office shall be held during the pleasure of the authority making the appointment."

The office of policeman is not one created by the constitution, but under the acts of the legislature. The latter body, therefore, which provided for the appointment of relator, had the power to provide for his removal and discharge. It might have indicated some method which should be summary, and without any trial or hearing at all dependent upon the will of some body or person. Instead of doing this, it had the right to provide that some person—as the defendant—should have the power by a decision which should be final, and not reviewable, to remove relator, but that before such decision was reached relator should be served with charges, and put upon trial. This is what it did do. It qualified and limited the absolute power which it might have given to defendant to remove relator by providing for a trial upon regular charges. The provision that the decision upon such trial and charges should be final, and not reviewable, was not in excess of the powers which the legislature might exercise over relator in depriving him of his office. Upon the other hand, the entire scope of the statute, including such decision and the charges

and trial which led up thereto, amplified and protected relator's rights, and are not a subject for complaint by him.

It is not necessary for us to hold, and we do not hold, that there might not be a case where the conduct of the commissioner of public safety in removing a policeman might be so manifestly colorable and governed by improper motives and unsupported by evidence that it would be the subject of review by this court. The statutory provisions to which we have referred are intended to and do secure to a member of the police force notice of charges against him, and a trial thereupon. He is undoubtedly entitled to have a substantial compliance with these statutory provisions, and is undoubtedly entitled to insist that the decision must not be made removing him without some evidence to support it. The courts would unquestionably, as they should, find opportunity to review the actions of a commissioner of public safety who should attempt to disregard the statutory provisions intended for the benefit of those under him, or who should attempt in bad faith or from improper motives, and without evidence, to dismiss one of them. As we have indicated, we cannot see that the present was such a case. While it is possible, as suggested by relator, that some ulterior motive underlay the proceeding against him, the statements to that effect in his petition are of conclusions, and not of facts which permit us to find such a condition to have existed. The views expressed upon this question are in accordance with those already laid down in another appellate division. People v. Ham, 59 App. Div. 314, 69 N. Y. Supp. 283.

It is further urged that the statutory provisions above considered are in derogation of rights which relator had secured by virtue of his appointment under a prior charter in and to a certain pension fund. We think, however, that this contention also must fail. Under the prior charter of the city of Syracuse (section 220) it was provided that the board of police commissioners, or a majority of them, might "remove from office * * * any policeman * * * for any cause deemed sufficient to them or a majority of them," they being simply required to "forthwith make and transmit to the common council of said city, to be entered upon their minutes, a statement in writing signed by them, or such majority of them, of their reason for such removal." Laws 1885, c. 26. It will thus be seen that the provisions in effect at the time of relator's dismissal did not narrow, but rather enlarged, his rights to protection from unjust dismissal. When plaintiff, therefore, received his appointment, and became contingently interested in the pension fund created under said charter, it was subject to a power of removal even broader and more complete than that of which he now complains. Furthermore, it is well settled that the appointment to an office such as he held is not to be regarded in any sense as a contract or grant of vested rights, but is subject to legislative enactment changing or curtailing its period of duration. Conner v. Mayor, etc., 5 N. Y. 285; Smith v. Same, 37 N. Y. 518; Long v. Same, 81 N. Y. 425; People v. Whitlock, 92 N. Y. 191.

Lastly, it is urged that this motion to dismiss the writ should not have been made or granted until after the return thereto had been

filed, and various cases are cited to support this contention. We see
no reason for such a rule. This motion was made upon the writ
itself and upon the papers upon which it was granted. It was in
the nature of a demurrer. It challenged the right of relator to any
relief, assuming that all the allegations in his papers were true. For
the purpose of settling such an issue, no return was necessary, and
it seems proper and desirable that there should be an opportunity in
such manner to raise the issue as to the sufficiency of the papers
upon which the writ was granted. While some earlier cases are cited
by appellant, which seem to sustain his contention, all of those were
decided prior to the adoption of section 2133 of the Code, and we
have no doubt that under that section the motion was proper. Peo-
ple v. McLean, 64 Hun, 205, 19 N. Y. Supp. 56. The order appealed
from should be affirmed, with $10 costs and disbursements.

Order affirmed, with $10 costs and disbursements. All concur.