PEOPLE ex rel. KEIM et al. v. DESMOND et al.

(Supreme Court, Appellate Division, Fourth Department. March 7, 1906.)

1. MUNICIPAL CORPORATIONS—APPORTIONMENT OF BENEFITS OF IMPROVEMENT—FRONTAGE OF LOTS.

Though it appears by computation that an assessment is at a uniform rate according to the frontage of the respective premises taxed, this alone is not sufficient to condemn the assessment as being in violation of the charter of the city of Utica, § 99, subd. 2, which provides that the expense of improvements shall be assessed upon such real estate as the assessors shall deem benefited thereby in proportion to the amount of its benefits.

2. SAME—JURISDICTION OF COURTS AS TO ASSESSMENT.

Where the assessors of benefits for a sewer expressly state in their return that the sewer is laid for the benefit of the property equally on both sides of the street, such return involves the judgment and discretion of the assessors, and is not reviewable by the supreme court by certiorari.

3. SAME—BENEFITS FROM SEWER.

It cannot be considered that a sewer is of no benefit to property, although a sewer previously existed which was evidently intended to accommodate temporarily the lands directly opposite, which were assessed for the new sewer; the latter being intended as a permanent part of the general sewer system of the city and to supersede the old sewer.

McLennan, P. J., and Nash, J., dissenting.

Certiorari by the people of the state of New York, on the relation of Henry C. Keim and others, against John C. Desmond and others, composing the board of assessors of the city of Utica, and John A. Cantwell, city clerk. Writ dismissed.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, NASH, and KRUSE, JJ.

W. L. Goodier, for relators.

Wm. Townsend, for defendants.

KRUSE, J. The relators seek to have reviewed by certiorari the validity of a local assessment for constructing a sewer in the street which their lands adjoin. The primary question involved in this controversy is whether, in making their determination, any rule of law was violated by the assessors to the prejudice of the relators. We think this has not been made to appear. The lands of the relators are on the westerly side of the street. They are considerably higher than on the east side. In 1871 a stub sewer was constructed on the west side of the street about halfway across the block, evidently to accommodate temporarily the lands directly opposite the sewer on the west side of the street, which included the relator's premises, the lands on the east side being too low to drain into it. In 1904 the sewer in question was constructed, running substantially parallel with the first, but nearer the east side, intended, no doubt, as a permanent part of the general sewer system of the city and to supersede the old sewer. It extended across the entire block, and was so built that both sides of the street can drain into it. The assessors in their return state that the "sewer as laid is a benefit to the property owners equally upon both sides of the street, and that said sewer, so laid, is provided with necessary elbows and tees for connecting with the sewers from houses on each of the lots on the westerly side of South Hamilton street, and was built and constructed and is adapted for the purpose of draining the lots and houses on both sides of South Hamilton street." The assessors seem to have apportioned the expenses of this last sewer equally on both sides of the street according to the frontage of each lot. The relators appeared before the assessors and objected to the assessment, but the assessors adhered to their determination, and thereupon the relators filed their objections with the city clerk, as the charter of the city permits, to bring the matter before the common coun-

cil. That body unanimously annulled the assessment and referred it back to the assessors to make a new assessment, and the assessors again apportioned the expenses as before, made the reassessment precisely the same as the first assessment. It is not claimed that the officers of the city in constructing this sewer did not proceed as the charter provides, or that there is any infirmity in the proceedings, save that the assessment is not made in accordance with the provisions of the charter. By subdivision 2 of section 99 of the charter it is provided that, as regards work of this character, "the expense thereof shall be assessed upon such real estate as they shall deem benefitted thereby in proportion to the amount of its benefits."

It is contended that in making this assessment the assessors departed from this rule. The objection is now made that the assessment was made upon the foot frontage basis, and not according to what the improvement actually benefited the relator's lands, although the specific objection was not made to either the assessors or the common council that the assessment was wrong, because made upon the foot frontage basis. It was contended there that this sewer was no benefit to the lands on the west side of the street, or, as it is put in the objections filed with the city clerk:

"That the property on the west side of the street is certainly not benefited to anything like the extent that the property on the east side of the street is by this sewer, and should not pay at the same rate as the property on the east side of the street. But, notwithstanding this, the assessment is at the same rate on both sides of the street."

Assuming, however, that the objections are sufficient to raise the question, we still think that the relators have failed to establish that the assessors departed from the rule laid down in the charter for making assessments of this character. By computation it appears that the assessment is at a uniform rate according to the frontage of the respective premises taxed, but this alone is not sufficient to condemn the assessment for it may still correctly represent the proportionate benefit of the improvement to each lot. People ex rel. Scott v. Pitt, 169 N. Y. 521, 62 N. E. 662, 58 L. R. A. 372; City of Ithaca v. Babcock, 72 App. Div. 260, 76 N. Y. Supp. 49; Donovan v. City of Oswego, 90 App. Div. 397, 401, 86 N. Y. Supp. 155), and this holds good as to premises on either side of the street, for the assessors expressly state in their return that the sewer is laid for the benefit to the property equally on both sides of the street, and for the purpose of this review the return must be taken as true. While there are other circumstances which might lead to a contrary conclusion, yet it is a question of fact for the assessors involving their judgment and discretion and not reviewable here. O'Reilley v. City of Kingston, 114 N. Y. 439, 442, 21 N. E. 1004; Le Roy v. Mayor, etc., 20 Johns. 432, 11 Am. Dec. 289. Although the common council might annul this first assessment and remit the matter to the assessors for reassessment, yet the assessors were the final arbiters of the extent that these lands were benefitted by this sewer. The charter makes the reassessment final and conclusive. Utica Charter, § 107.

The cases relied upon by the relators we think do not apply. It

appeared in those cases from the physical situation and undisputed facts, that the local improvement was of no benefit to the lands assessed, as in the Dunkirk Case, where it appeared that the lands were so low that they could not be drained into the sewer. Clark v. Village of Dunkirk, 12 Hun, 187. Such is not this case. It cannot be said that this sewer is no benefit, and the amount or extent of its benefit to the relator's lands was a question for the assessors. They saw the premises, knew their precise location, area, depth of lots, the extent of the improvements, the relative value of the lots on the west side, which are on high ground as compared with those on the low ground on the east side, the condition of the old sewer, the service and added value of the new sewer to these lands and their circumstances, which we cannot know, and regarding which the record is silent. The objection is also made by the defendants that the writ of certiorari will not lie to review the determination of the assessors for the reason that their determination after the review by the common council is made final and conclusive by the express provisions of the charter. People ex rel. Schuylerville, etc., R. R. v. Betts, 55 N. Y. 600; People ex rel. Rothchild v. Muh, 101 App. Div. 423, 92 N. Y. Supp. 22, but upon that we express no opinion. We rest our decision upon the ground that the relators have not shown that the assessors violated any rule of law in making their assessment prejudicial to their rights. This they are required to establish to successfully attack its validity. The writ of certiorari must be dismissed, and the assessment confirmed, with $50 costs, and disbursements.

Writ of certiorari dismissed, and assessment confirmed, with $50 costs, and disbursements. All concur, except McLENNAN, P. J., and NASH, J., who dissent.

McLENNAN, P. J. (dissenting). The sole question presented by this appeal is, Was the tax imposed upon the relators on account of the cost incurred in the construction of the sewer in question levied "upon the lands benefitted by the local improvement in proportion to such benefit"? If not, the tax was erroneous, and its collection should be restrained.

The facts are not in dispute. The relators are owners of real property situate upon the westerly side of South Hamilton street in the city of Utica, N. Y., which street extends along the side of a hill in such manner that the lots of the relators and others similarly situated are considerably higher than the property abutting upon the easterly side of the street. About the year 1871 the city of Utica caused a 12-inch sewer to be constructed upon the westerly side of said street, in front of relators' property, connected it with its general sewer system, and the relators immediately connected therewith, and ever since have continued to use the same, which is in perfect repair and at all times has been adequate and sufficient for their purposes and fully accommodates their property and all other similarly situated and abutting upon the westerly side of said street. The entire cost of the sewer so constructed was assessed upon the property of and paid for by the relators or their grantors, for the reason that the property upon the opposite

side of the street, it being so much lower, could not be drained into it. Thereafter, and in the year 1904, the city of Utica duly authorized the construction of a sewer upon the easterly side of South Hamilton street, to be laid at such depth as to furnish sewer facilities to those residing upon that side of the street, and also in such manner that it could be used by the relators if they desired to incur the expense of connecting therewith and were willing to abandon the sewer, which they had fully paid for, and which was in every way as suitable for their purposes as the new sewer, and even more convenient, because connections with it could be made at much less expense. The new sewer so authorized was constructed in the manner indicated, but the connections of the relators with the old sewer were left intact and their sewage and drainage was in all respects properly cared for as before. To raise the money with which to pay for the new sewer the defendants ascertained the entire cost of the same, the number of feet front of property abutting upon both sides of the street where the new sewer was laid, divided the entire cost by such number of front feet, found the quotient to be $0.9670309, and then by multiplying the number of feet front owned by each of the relators by such quotient, determined that the result of such mathematical calculation represented the benefit which each received by the construction of the sewer in question; a sewer which the relators did not require because they already had, and had paid for, another which was perfect in all respects and afforded them ample sewer facilities.

The method adopted by the defendants to ascertain the amount of the tax which should be levied against the relators' property, respectively, most conclusively shows that such tax was not levied "in proportion to such benefit," but upon the front-foot principle, and without considering the benefit to any particular owner of property. The statement in the return "that said sewer as laid is a benefit to the property owners equally upon both sides of the street," which is simply a conclusion of law or an expression of an opinion, ought not to be regarded as in any manner establishing the proposition, in view of the conceded facts. Any claim that the tax which is complained of was levied "upon the lands benefitted by the local improvement [the new sewer] in proportion to such benefit," it seems to me, is absurd in the extreme. As we have seen, the relators had a perfect sewer, which they had paid for, which was suitable and adequate for their use, as good and even more convenient for them than the new sewer. And yet it is said that the construction of such new sewer was of precisely the same benefit to their property as to the property across the street, which had no sewer facilities, and which was in urgent need of same. We will assume that the Legislature has the power to authorize the perpetration of even such a palpable injustice. Practically it has been thus held in the "Pavement Cases," so-called, where the front-foot method of assessment has been upheld. We, however, venture to suggest that no such injustice has ever been sanctioned by the courts except in obedience to legislative mandate. In the case at bar, the Legislature, as we think, instead of authorizing, has precluded, the adoption of the

front-foot principle in fixing the amount of an assessment like the one in question.

The act creating the board of assessors of the city of Utica (the defendants) provides (chapter 738, p. 993, of the Laws of 1897, as amended by chapter 215, p. 588, of the Laws of 1898, and chapter 384, p. 1054, of the Laws of 1901), that it shall assess the cost of local improvements "upon the lands benefitted by the local improvement in proportion to such benefit, except in those cases in which by the charter of said city or by this act the assessment is to be made upon a different principle." Concededly no provision is contained in the act, except as above, providing how an assessment for a sewer improvement shall be made. That such assessment can only be made "in proportion to such benefit" is emphasized by section 99, subd. 2, of the charter of the city of Utica, which provides:

"In case the work (a local improvement) shall be the construction in any street of any drain or sewer, separate from any other work, the expense thereof shall be assessed upon such real estate as they shall deem benefitted thereby, in proportion to the amount of its benefits."

It is not claimed that the construction of the sewer in question was not entirely "separate from any other work." Subdivision 1 of section 99 of the charter provides:

"In case the work shall be the grading, levelling, paving, macadamizing, etc., of a street, the city surveyor shall ascertain the aggregate front length of lots on both sides thereof, and the front length of each lot or parcel * * * and the Common Council shall cause the average expense upon each foot of the lots or parcels of land on both sides of said street * * * to be ascertained, and each lot or parcel of real estate to be assessed with its portion of the expense, by multiplying its number of feet front into the average expense per foot." The same method is prescribed for sidewalks. Subdivision 3, § 99.

The provisions of the statutes referred to clearly indicate, as it seems to me, that the defendants in the case of the construction of a sewer, were required to exercise their judgment, and in the other, only their mathematical skill.

In the case at bar it is evident, is established beyond controversy, that the defendants failed to exercise the first function, but relied upon their ability to properly solve the mathematical problem which they were directed to solve by the Legislature in case the local improvement was the construction of a pavement or sidewalk, instead of a sewer. There ought not to be given undue significance to the statement in the return of the defendants that said sewer "as laid is a benefit to the property owners equally upon both sides of the street," when, as it appears, such proposition is wholly and entirely refuted by the conceded facts. After all has been said, we come back to the proposition, Was the construction of the new sewer, which, we must assume, was required, and needed by the property owners abutting upon the east side of South Hamilton street, only worth to them the same price per front foot as such sewer was worth to the property owners abutting upon the westerly side of said street, who already had a sewer of practically the same character, which was adequate and suitable for their purposes, and which was connected with the general sewer system of the city?

If not, then the tax complained of was illegal, because, as pointed out, there was in existence no legislative mandate which authorized the same or such injustice. If the contention of the defendants is correct, may they not insist that even a third sewer may be constructed in South Hamilton street for the sole accommodation of the owner of some particular piece of property, which is at a much lower grade than any of the rest, and then declare that the cost of such sewer, if constructed so as to accommodate all, should be levied equally upon the owners of property abutting upon each side of said street, according to the number of front feet owned by them respectively? As before suggested, we think the proposition is absurd, has no support in reason or in law, except where the Legislature has seen fit to authorize such iniquity, which it has not done in this case.

We conclude that the assessment or reassessment made by the defendants was made upon a wrong principle and contrary to the uncontradicted facts, and therefore should be annulled, and declared void as to the relators, with costs.

NASH, J., concurs.