PEOPLE ex rel. BROWNELL v. BOARD OF ASSESSORS OF CITY OF, BUFFALO.

(Supreme Court, Special Term, Erie County. April 6, 1908.)

1. CERTIORARI—PROCEEDINGS—MOTION TO QUASH—TIME FOR MAKING.
   Ordinarily a motion to quash a writ of certiorari can only be entertained after a return is made; but where it appears upon the face of the writ that it is insufficient in law, and that it does not lie to review the acts complained of, it may be quashed upon motion made upon the writ alone, and before a return has been made thereto.
   [Ed. Note.—For cases in point, see Cent. Dig. vol. 9, Certiorari, § 161.]

2. SAME—HEARING—MOTION.
   The hearing of the merits on a writ of certiorari is had at the Appellate Division, and all incidental motions should be heard at Special Term.

3. MUNICIPAL CORPORATIONS—PUBLIC IMPROVEMENTS—PETITION—REVIEW—CERTIORARI.
   Certiorari lies to determine the regularity of a petition of property owners for a street improvement and the certificate of the assessors annexed thereto.
   [Ed. Note.—For cases in point, see Cent. Dig. vol. 36, Municipal Corporations, § 840.]

4. CERTIORARI—MOTION TO QUASH UPON THE WRIT ITSELF—NATURE OF MOTION.
   A motion to quash a writ of certiorari, made upon the writ itself and the petition upon which it was granted, is in the nature of a demurrer, and challenges the relator's right to any relief, assuming all the facts alleged to be true.
   [Ed. Note.—For cases in point, see Cent. Dig. vol. 9, Certiorari, § 161.]

5. MUNICIPAL CORPORATIONS—PUBLIC IMPROVEMENTS—CERTIFICATE OF ASSESSORS TO PETITION OF PROPERTY OWNERS—CONCLUSIVENESS.
   Though the assessor's certificate to a petition of property owners for a street improvement is by a city charter made conclusive as to the facts certified, questions of law arising out of the preliminary proceedings may be raised and determined on certiorari.

6. SAME—PETITION FOR STREET IMPROVEMENTS—SIGNATURES OF PROPERTY OWNERS BY ATTORNEY.
   In the absence of a requirement in a city charter that property owners shall sign a petition for a street improvement personally, they may sign by attorney, and the want of authority of those signing as attorney will not be presumed, but must be proved.

7. SAME—SIGNATURE OF CORPORATION BY OFFICER.
   There is no presumption that an officer of a corporation has implied authority to sign a petition for a street improvement on behalf of the company, but it must appear that the directors authorized it.

8. SAME—SIGNATURE OF EXECUTOR—"OWNER."

An executor is not an "owner" of realty, and his signature to a petition for a street improvement as executor is not authorized.

[Ed. Note.—For other definitions, see Words and Phrases, vol. 6, pp. 5134, 5151; vol. 8, p. 7744.]

9. SAME—SIGNATURE OF ONE OF TWO OR MORE CO-OWNERS.

There is no presumption that any one of two or more co-owners of property has authority to sign a property owner's petition for a street improvement.

10. SAME—FAILURE OF COUNCIL TO OBSERVE ORDINANCE.

The fact that a city council, in improving the streets, does not observe an ordinance providing that a petition for improvements shall be void unless every name upon it shall be the bona fide signature of the person indicated by such name, who at the time of signing shall have written opposite his signature the date when it was written, but accepts a petition, some signatures to which are by attorney, and some of which have no dates affixed, is not ground for reversing the proceedings on certiorari, since, as the council was acting within the scope of its authority under the city charter, it was no objection that in conducting the proceedings it failed to conform to the by-laws established by itself to carry into effect the powers conferred.

11. SAME—POWER OF COUNCIL TO PRESCRIBE FORM OF PETITION.

The fact that a city charter confers the power on assessors to determine whether a property owner's petition for a street improvement is a majority one or not does not preclude the council from prescribing the manner and form in which the petition shall be prepared and executed, and it may reject the petition in the first instance, if it appears that the requirements of the ordinances have been disregarded, or it may reject it after the assessors have certified to its truth, and may decline to order the improvement.

12. SAME—POWER OF LEGISLATURE TO MAKE ASSESSORS' DECISION CONCLUSIVE.

Since the Legislature may authorize a city council to proceed to provide for a street improvement without petition and in disregard of the protests of a majority of the property owners, it has power to declare that the determination of assessors as to the basic fact that the petition is signed by a majority of the owners shall be conclusive.

Certiorari by the people, on the relation of William C. Brownell, to review a decision of the board of assessors of the city of Buffalo. On motion to quash the writ. Motion denied.

Frank F. Williams, for relator.
L. E. Desbecker and S. F. Moran, for respondent.

MARCUS, J. This motion is made to dismiss, quash, or supersede the writ of certiorari. As a rule, such motion can only be entertained after a return is in fact made. People v. Cooper, 57 How. Prac. 466; Saratoga & W. R. Co. v. McCoy, 5 How. Prac. 380. But where it appears upon the face of the writ that it is insufficient in law, and that it does not lie to review the acts complained of, the Special Term has power to quash the writ upon a motion made upon the writ alone, and before a return has been made thereto. People v. McClellan, 107 App. Div. 272, 94 N. Y. Supp. 1107; People v. Peck, 73 App. Div. 89, 95, 76 N. Y. Supp. 328. The hearing of the merits is to be had at the General Term, and all incidental motions should be heard at the Special Term. People v. McLean, 64 Hun, 207, 19 N. Y. Supp. 56.

It is contended that the determination sought to be reviewed does not finally determine the rights of the parties, and therefore the writ cannot be maintained. The petition of the property owners and the certificate of the assessors annexed thereto is the foundation of all subsequent proceedings, and the charter declares that the certificate shall be conclusive as to the facts certified. Since the "jurisdiction" of the common council depends upon the validity or regularity of these preliminary proceedings, it is obvious that, if for some reason or other they are invalid, they should be judicially declared so before any further steps are taken in the matter. In a case similar to this the writ was entertained without any question being made. People v. Syracuse, 30 Misc. Rep. 409, 63 N. Y. Supp. 878.

This motion is made upon the writ itself, and the petition upon which it was granted. It is in the nature of a demurrer. It challenges the right of the relator to any relief, assuming that all the facts alleged are true. People v. Peck, supra. The certificate of the assessors is made conclusive as to the facts certified, and that is all. Questions of law arising out of the preliminary proceedings may be raised, examined, and determined; but the determination thereof should be made by the Appellate Division, and not by this court upon this application. For the purpose, however, of showing that the writ should not be quashed, we will examine and consider various points raised by the relator.

Relator points out that some of the signatures were made "per Atty." But the charter does not require that the property owner shall sign personally, "and it would require affirmative words in the statute, taking away the power to sign by attorney, before such signing would be illegal. If the people signing as attorneys were not in fact authorized to sign, such want of power is not to be presumed, but must be proved by those who attack the petition as invalid." People ex rel. Holler v. Board of Contract of Albany, 2 How. Prac. (N. S.) 425; Hudson County v. Bayonne, 54 N. J. Law, 297, 23 Atl. 648. This objection, therefore, is not tenable. Query, whether the assessors' certificate is conclusive as to the authority of the agent or attorney?

Relator makes objection to the signature "The Duffy Silk Co., per Bernard Duffy, Vice Prest." In Mulligan v. Smith, 59 Cal. 224, 225, it is held that no presumption prevails that the president and secretary of a corporation have implied authority to sign a petition of this character. It must appear that the board of directors authorized it, and that is evidently sound doctrine; but, query, is the assessors' certificate conclusive as to Duffy's authorization?

Relator also makes objection to several signatures as "executor." An executor is clearly not an "owner" of the realty, and his signature cannot be counted. So held in the case last cited. As we said before, the conclusiveness of the certificate does not preclude the examination of questions of law that may arise in the course of the preliminary proceedings, nor does it cure or obviate any material, substantial defect appearing upon the face of the petition itself; for instance, where it appears that one of the signers to the petition is not,

by presumption of law, an owner of the land, and cannot be such owner in the mere representative character in which he signs his name. To be more specific: As matter of law an executor is not the owner of the land of his testator, and when he represents himself to be such owner "as executor," the presumption is that he is not. If a valid express trust is created, then he becomes vested with the legal title as trustee, and he is the "owner" of the land in that character. But when he simply signs himself "as executor," does not the presumption stand that he is not vested with the title? Even though he had a power in trust, he would not be the owner. Assuming, however, that the certificate is prima facie evidence, is it conclusive? If so, it must be based upon the assumption that the assessors inspected the various wills, or procured a lawyer to make the examination. Here, then, is a question for the Appellate Division to determine—as to what effect, if any, shall be given to the assessors' certificate in this instance. Clearly, the assessors have no power to determine that a mere executor is the owner. They cannot confer title.

Relator further complains that, in estimating the number of resident owners of land to determine how many were necessary for a majority, the assessors counted only one owner in all cases where the parcel or parcels were owned by and assessed to two or more persons, or to a husband and wife. This raises the question whether, in estimating the majority of resident owners and the question of feet frontage, the assessors may, legally and properly, take the signature of one co-owner as representing the whole frontage of the lot. May a person owning an undivided interest in a parcel of land sign the petition as the owner of the whole of it? The question is answered in the negative in the following adjudications: Mulligan v. Smith, supra; Merritt v. City of Kewanee, 175 Ill. 544–547, 51 N. E. 867. In People v. Franklin, 5 Lans. 129, held, that joint owners are to be counted separately, in ascertaining whether a majority of the persons whose names are on the tax roll have consented to bonding a town for railroad purposes. There is no presumption that any one of two or more co-owners were authorized to sign such a petition, for there is no implication of authority from the relationship. Questions arising are: (1) Is the assessors' certificate conclusive evidence of the existence of such authority, or any evidence whatever? (2) Is it conclusive evidence that the person signing was the only resident owner?

Again, the relator complains that the provisions of a certain ordinance were not complied with. That ordinance provides that:

"Every petition shall be void unless every name upon it shall be the bona fide signature of the person indicated by such name, who at the time of signing shall have written opposite his signature the day of the month and the year when such signature was written. Every petition which does not comply in all respects with the conditions prescribed by this section shall be rejected."

Relator makes the contention that the signature must be made by the owner himself, and cannot be made by agent or attorney. Such an objection may constitute sufficient ground or reason for the rejection of the petition by the common council; but, if the council fails to do so, then the charter comes into operation and makes the signa-

ture good. We have already spoken to this point, and nothing further is required.

Relator further complains that no date was written after certain signatures, and that the dates so affixed to other signatures were not so affixed by the persons who wrote the signatures, but by some one else. The common council, however, appears to have paid no attention to the omission of the dates. The answer to all these objections is that, where the common council in the improvement of the streets acts within the scope of the authority conferred by the charter and complies with the forms prescribed, their proceedings will not be reversed on certiorari; and it is no objection that in conducting the proceedings, it fails to conform to by-laws established by itself to carry into effect the powers conferred. Ex parte Mayor, etc., of Albany, 23 Wend. 277, 280. We do not, however, agree with the corporation counsel in his contention that the common council had no power to pass such an ordinance and that the same is void; that the charter confers the power upon the assessors to determine whether a petition is a majority one or not, and it is beyond the power of the council to prescribe the rules which they shall follow in so making their determination. It is difficult to perceive how or in what manner this ordinance controls or interferes with the board in their determination. The petition is presented, not to the assessors, but to the common council, which thereupon refers it to the assessors simply to ascertain whether it is in fact a majority petition. The council has the undoubted power to prescribe the manner and form in which the petition shall be prepared and executed, and to reject it in the first instance, if it appears, upon its face or otherwise, that the requirements of the ordinance have been disregarded. So it may be rejected for the same reason after the assessors have certified to its truth and veracity. Indeed, the council may decline to order the improvement, even though the petition is in all things perfect. The purpose of the ordinance is to prevent as far as possible, the perpetration of fraud and the commission of gross abuses by contractors and other parties interested in having the improvement ordered, and the ordinance appears to be a good and wise one.

In conclusion, it may be advisable to make a few general observations upon the case. In Re Kiernan, 62 N. Y. 457, the statute provided that upon the presentation of a majority petition a notice should be published stating the time when the council will proceed on such petition, etc., and that the determination of the council, after such notice and hearing, should be final and conclusive. In the opinion of Justice Gaynor, an ex parte determination would not be conclusive— that it "would lack due process of law." In re City of Mt. Vernon, 34 Misc. Rep. 229, 68 N. Y. Supp. 823, affirmed on opinion below 64 App. Div. 619, 72 N. Y. Supp. 1097. In answer to that it may be suggested that, since the Legislature may authorize the council to proceed without petition and in utter disregard of the protests of a majority of the property owners, it has power to declare that the determination of the assessors shall be conclusive, in case it provides for proceedings by petition. In other words, having granted the privilege of proceeding by petition, and declared that the assessors' deter-

mination shall be conclusive as to the basic fact—i. e., that the petition is signed by a majority of the owners—no legal right of the owners can be said to be impaired by the fact that they are thereby precluded from proving that the determination was erroneous. This is the effect or consequence of the statutory provision. They have no right to demand that the decision of the tribunal created by the Legislature for the determination of the fact shall be open to inquiry and examination, assuming, of course, that the assessors have proceeded in good faith, without fraud or collusion. Nor is it of any consequence that the statute fails to provide for notice and opportunity to be heard, since the Legislature had power to dispense with such conveniences and to declare that the ex parte determination of the assessors shall be conclusive as to the facts. In Kiernan Case no stress whatever is laid upon the circumstances that the statute provided for notice and hearing.

Relator argues that the determination may properly be held conclusive in a collateral proceeding, but that it is, notwithstanding, subject to review in a direct proceeding (as certiorari), and cites authorities to sustain his contention. And yet the proceeding in the Kiernan Case was a direct proceeding provided by statute, and not a collateral one; and in view of the nature or character of a statute of this kind, which merely grants a privilege to property owners, it is difficult to perceive any sound reason for the distinction attempted to be made. In People ex rel. Holler v. Board of Contract of Albany, 2 How. Prac. (N. S.) 423, the common council ordered the improvement after a proper petition had been presented to it, and the respondent awarded the contract to relator, but afterwards rescinded the resolution. Relator brought mandamus. The charter provided that the certificate of the city surveyor and engineer should be conclusive evidence that the required number of feet are duly represented on a petition. Held, that the respondents could not question the certificate. The remarks of Peckham, J., on pages 427, 428, are very pertinent. In People v. Betts, 55 N. Y. 600, it was held that a statute prescribing that the determination of an inferior tribunal shall be final and conclusive is a bar as well to review by a common-law certiorari as by appeal. In People ex rel. Keim v. Desmond, 111 App. Div. 760, 97 N. Y. Supp. 795, the objection was made that certiorari would not lie to review the determination of the assessors, for the reason that their determination after the review by the common council is made final and conclusive by the charter; "but upon that we express no opinion." This case was reversed in 186 N. Y. 232, 78 N. E. 857, upon the ground that it appeared from the petition and return that the assessors adopted an erroneous principle.

In order, therefore, that the Appellate Division may have the opportunity of determining the various questions and points of law raised by counsel or suggested by the court, it necessarily follows that the motion to quash the writ should be denied, with costs.